**John S. MORSE, Plaintiff,**

v.

**Edmund A. STANLEY, Jr., et al., Defendants.**

No. 81 Civ. 884(RO).

United States District Court, S.D. New York.

July 12, 1983.

---

Cahill, Gordon & Reindel, New York City, for plaintiff; Thomas F. Curnin, Kenneth Meister, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendants; John Ohlweiler, New York City, of counsel.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiff John S. Morse, a top executive with many productive years of working life in front of him, left his employer and went to a competitor. He commenced this action to compel defendants, the trustees of his former employer's profit-sharing plan, to accelerate the payment of his vested retirement benefits—an amount in excess of $203,000. He contends that defendants have failed to administer the Bowne Profit-Sharing Trust (the "Trust") in accordance with its own terms and, alternatively, that they have violated the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* by failing to administer the Trust solely in the interest of its beneficiaries. Having considered the evidence adduced at the trial, I conclude that neither the profit-sharing plan nor federal law requires the early distribution to plaintiff of benefits. Plaintiff's action is therefore dismissed with costs and disbursements.

I hold instead that defendants, as trustees of the Trust, implemented a policy of paying accelerated benefits only to terminated plan participants who either left Bowne to take employment with companies which did not directly compete with Bowne or whose vested benefits were not greatly in excess of $10,000. I further conclude that ERISA does not mandate the payment of accelerated benefits upon request, as plaintiff urges, unless the retirement plan so provides or unless the plan's trustees administer the plan in an arbitrary and capricious fashion so as to exclude the payment of benefits to an individual otherwise entitled thereto.

John S. Morse was employed by Bowne of New York City, Inc. ("Bowne New York") from approximately November 1, 1964 through July 27, 1980. Bowne New York is a wholly owned subsidiary of Bowne & Co., Inc. ("Bowne"), and is engaged in the financial printing business. At Bowne New York, Morse was a highly-successful salesman of financial printing services specializing in an area of financial investment known as the unit investment trust. At the time he left to take a job with a competitor, he was a vice-president.

Bowne New York maintained a profit-sharing plan—the Bowne Profit-Sharing Trust—for the benefit of its employees. That Trust was first established on November 1, 1961, and has been amended several times since then. It qualifies within the terms of ERISA and is funded by employer contributions. These contributions are made on a yearly basis from the profits of the previous taxable year.

The Trust is administered by four trustees—the named individual defendants—who possess the "sole and absolute discretion" to administer the provisions of the Trust. Their duties include the allocation of employer contributions to the accounts of individual employees and the payment of

accrued vested benefits to qualifying terminated plan participants.

The termination payment procedure is set forth in section 8.1 of the Trust.[1] It calls for the payment of vested benefits upon the later of

(1) the earlier of the Participant's Early Retirement Date or Normal Retirement Date, or

(2) the termination of the Participant's employment with all Controlled Companies.

Section 8.1 also allows the Trustees to "establish procedures to make distribution to a Terminated Participant at an earlier date than that [otherwise provided]." At the time plaintiff left Bowne New York, it is clear that the Trustees had neither published nor disseminated accelerated payment procedures.

During the late 1970's, Morse it appears, felt dissatisfaction with the way his accounts were being serviced and was unhappy with his compensation. Consequently, as of June 25, 1980, Morse resigned from Bowne New York to take a position with Pandick Press, Inc., a direct competitor of Bowne New York in the financial printing business. Although Morse had discussions with various officers of Bowne New York prior to his departure about the terms of his departure, he did not at that time enter into any agreement either modifying the terms of the Trust or exempting him from its provisions.

Subsequent to his leaving Bowne New York, Morse formally requested the Trustees to accelerate the payment of his benefits. This application was denied in a letter dated September 25, 1980. After further correspondence, the Trustees reiterated this denial in an October 31, 1980 letter, which stated:

[T]he Trustees do not accelerate payment in those instances where an employee leaves to go with a competitor if the employee's profit-sharing balance exceeds $10,000 at the time of his termination of employment.

By letter dated December 30, 1980 the Trustees again reaffirmed their decision.

Morse's belief that he was entitled to accelerated payment was based on his perception that during the course of their administration of the Trust, the Trustees had developed a policy of paying benefits on an accelerated schedule upon the request of terminated employees. The record is not without some support for this belief. Some 79 other former Bowne employees had requested and received accelerated distribution.[2]

Nevertheless, from the totality of the evidence it appears that acceleration was granted only to those participants with relatively small vested benefits where admin-

1. Section 8.1 titled "Distribution Provisions", states, in pertinent part:

(A) Distribution to a Participant of the nonforfeitable portion of his Account shall commence not later than the sixtieth (60th) day after the close of the Plan Year in which the later of the following events occur:

(1) the earlier of the Participant's Early Retirement Date or Normal Retirement Date, or

(2) the termination of the Participant's employment with all Controlled Companies.

(B) The Trustees may establish procedures to make distribution to a Terminated Participant at an earlier date than that specified above. In no event, however, shall distribution to a Participant, who terminates for reason of Permanent and Total Disability, be deferred beyond ninety (90) days following the final determination of the Participant's disability.

\*    \*    \*    \*    \*    \*

(D) Where there is a deferral of distribution (either in whole or in part) for at least three (3) months, the amount to be so deferred shall be segregated into a savings account under a Bank as selected by the Trustees until distributed and, therefore, such distribution shall include interest credited under the savings account. The amounts so segregated shall be increased for interest at the prevailing rate for the period of deferral preceding segregation.

2. Plaintiff identified four individuals who it claims were similarly situated to Mr. Morse, i.e., they were at the same professional level at Bowne and they left to take positions with competitors, and who received accelerated distribution of their vested benefits. I find that the Trustees did not abuse their discretion in determining that Morse presented a different situation than these others and that he was, therefore, not entitled to early payment simply because these others were.

istration of the small segregated accounts was uneconomical and where the amount paid out was not, as a practical matter, so large as to be, quixotically, an inducement to quit. *See infra,* p. 1459. Thus I find that defendants had developed an accelerated payment procedure as articulated in the October 31, 1980 letter to Morse. *See supra,* p. 1457. Apart from this articulation of the policy, which I credit, the record further demonstrates that prior to the advent of ERISA, but while the Trust was in effect, other terminated participants of Morse's stature at Bowne not only were denied accelerated payment of their benefits but were caused to forfeit them upon their taking jobs with competitors. Moreover, 18 former Bowne employees have been denied acceleration in the past two years.

■ I therefore conclude that defendants properly administered the Trust when they denied plaintiff the accelerated payment he had requested. I further find that defendants' application of this policy to plaintiff was neither arbitrary nor capricious in view of their prior denial of payment to others who left Bowne to work for competitors. *See, e.g., Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.,* 637 F.2d 357, 362 (5th Cir.1981) *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981) ("The trustee's decision withstands scrutiny . . . [where] he treated all similarly situated persons the same.") Thus both of plaintiff's contentions based upon the operation of the Trust are not supported by the record.

Plaintiff contends, alternatively, that if, as I have found, the Trustees did not violate the terms of the Trust by refusing to accelerate payment to him, they still violated two requirements of ERISA: the duty to administer the Trust "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . .," 29 U.S.C. § 1104(a)(1)(A)(i), and the duty of disclosure imposed by 29 U.S.C. § 1022(a)(1).

■ I am aware that in *Frary v. Shorr Paper Products, Inc.,* 494 F.Supp. 565 (N.D.

Ill.1980), and *Cohen v. Stanley,* 566 F.Supp. 246 (S.D.N.Y.1983), other courts concluded that the obligation to administer the Trust "solely in the interest of the participants" compelled the accelerated payment of benefits where the only reason given for a denial of accelerated distribution was that the participant had gone to work for a competitor. Reasoning that the same rule should apply to his situation and pointing, moreover, to the Trust requirement that his funds be placed in a segregated account and not remain a part of the main Trust corpus, plaintiff would have me read ERISA to place on the Trustees the affirmative obligation to accelerate the payment of benefits upon request. Nevertheless, "Congress never intended to impose . . . a requirement that any benefits be payable before age sixty-five." *Riley v. MEBA Pension Trust,* 452 F.Supp. 117, 120 (S.D.N.Y.1978). As I see it the promise to administer the Trust "solely in the interest of the participants" is fully satisfied by the Trustees faithfulness in seeing to it that the promised sums are available at the contracted time of retirement.

ERISA was enacted to achieve two purposes: to insure the financial integrity of employer-sponsored pension plans and to safeguard the retirement security of individual plan participants by compelling the vesting of pension rights. *See* 29 U.S.C. § 1001. By those standards, the Bowne plan indisputably serves ERISA's dual goals. Plaintiff does not claim, nor could he, that the Trust as administered threatens his retirement security. The segregation provision upon which plaintiff depends, in fact, ensures that his benefits will be available to him upon retirement even should the balance of the Trust corpus, for some reason, disappear.

Rather what plaintiff would have the Court find is that he is somehow being punished by not being granted accelerated payment. Plaintiff is in fact, however, only getting his due under the Trust. Having found that defendants have abided by the Trust's terms and have not treated plaintiff in an arbitrary and capricious fashion, I do not conclude that ERISA compels them to deviate from those terms to reward a for-

mer employee who has, in fact, gone to work for a competitor. As the Court of the Appeals for the Eighth Circuit has concluded, although facing a somewhat different question, "[a] terminated participant may not compel payment of his benefits prior to the latest date set forth in the statute unless the terms of the plan mandate earlier distribution." *Hauck v. Eschbacher,* 665 F.2d 843, 849 n. 9 (8th Cir.1981).

A pension plan is obviously designed to secure an employee's retirement years usually following what the employer hopes will have been productive years of service with it. Plaintiff's approach, however, would change the Bowne plan from a retirement security program into a departure incentive plan. Under plaintiff's theory, employers would undoubtedly face situations where valued employees trained over a number of years, would find competitors' offers economically irresistible because upon changing jobs they would be entitled to collect immediately their perhaps sizeable "retirement" benefits. Loyal employees waiting for retirement to collect their benefits might not view this with equanimity. Moreover, by allowing pre-retirement payment, plaintiff's approach would risk pre-retirement dissipation rather than ensuring the provision of pension benefits at the time when presumably an employee's income is limited. I do not read ERISA to require this. What ERISA does require is that employers who choose to offer pension programs structure those programs to ensure a secure retirement for plan participants and financial integrity for the plan itself. ERISA further requires that the Trustees of these plans administer them in accordance with their own terms and not in an arbitrary or capricious fashion. The trustees of Bowne, as I discussed earlier, have substantially met that obligation.

I do find, however, that the Trustees have not met their responsibility, as set by 29 U.S.C. § 1022(a)(1) to furnish to plan participants a summary description of material changes in coverage. However, insofar as the material change here, *i.e.,* the accelerated payment program as set forth in the October 31, 1980 letter, *supra,* enlarges rather than restricts participants' rights

and in fact works no prejudice to plaintiff, I conclude that defendants are not estopped from denying plaintiff accelerated payment. *See Pollock v. Castrovinci,* 476 F.Supp. 606 (S.D.N.Y.1979), *aff'd,* 622 F.2d 575 (2d Cir.1980) (holding that where employee was not prejudiced by trustee's failure to distribute and file plan modifications, no penalty attached). Defendants are, however, directed to distribute to their employees a summary of these modifications, as required by § 1022, and file the same with the Secretary of Labor, as required by § 1024.

The foregoing constitutes the Court's findings of fact and conclusions of law and is so ordered.