George L. GOVONI, Plaintiff, Appellant,

v.

BRICKLAYERS, MASONS AND PLASTERERS INTERNATIONAL UNION OF AMERICA, LOCAL NO. 5 PENSION FUND and Plymouth-Home National Bank, Defendants, Appellees.

No. 83–1820.

United States Court of Appeals,
First Circuit.

Argued March 7, 1984.

Decided April 24, 1984.

James T. Grady, Boston, Mass., with whom Grady, Dumont & Dwyer, Boston, Mass., was on brief, for plaintiff, appellant.

Arthur J. Flamm, Boston, Mass., with whom Flamm & Birmingham, Boston, Mass., was on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.

BREYER, Circuit Judge.

George Govoni, the appellant, has sued the Bricklayers, Masons and Plasterers International Union Local No. 5 Pension Fund in an effort to obtain a larger pension. The trustees of the Pension Fund pay him a reduced amount because they believe a "break" in his years of work in covered service deprives him of pension credit for years worked before the break. Govoni argues, however, that his "break" falls outside the pension plan's definition of "break in service;" that the trustees, in enforcing a different interpretation, have violated §§ 102 and 203 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1022, 1053; hence, he should receive pension credit for earlier years and

a larger pension. The district court agreed with the trustees and decided against Govoni. We affirm. 573 F.Supp. 82.

Govoni worked in plan-covered employment from 1951 until he retired in 1979—with one important exception. He left work in covered employment in March 1962 and he did not return until October 1966. The parties agree that without this "break" he would have received credit for the eleven pre-break years, 1951 to 1962. They also agree that under the plan rules as they stood between June 1962 (when the plan was first adopted) and 1976 (when the plan was amended), Govoni would have lost all this credit because of his four year "break," for "break in service" was then defined simply to include any period of three or more consecutive years away from the (covered) job. The parties do not agree, however, about whether Govoni's "break" still falls within the plan's definition of "break in service" as the term was defined in 1979, when Govoni retired.

In 1979 (and since 1976) the relevant definition has read as follows:

"Break in Service" shall mean a break in the continuity of an employee's employment in the trade on or after June 1, 1962, and shall be deemed to have occurred if the conditions of both (a) and (b), below occur ...

(a) An Employee fails to accrue at least one-half (½) of a Vesting Credit in any period of three (3) consecutive Plan Years,

(b) Commencing August 1, 1976, an employee does not earn at least four tenths (⁴⁄₁₀ths) of a Vesting Credit in a Plan Year and the number of such consecutive Plan Years exceeds his total Vesting Credit.

The language about "vesting credits" in this rule refers to whether a member does enough covered work for a year to "count." Thus we can simplify that language and read the rule as saying that a "break in service" that removes an employee's previous credit means a break that occurs after June 1, 1962, and that satisfies two conditions: (a) the employee fails to work in covered employment for three consecutive years, and (b) "[c]ommencing August 1, 1976," the employee fails to work in covered employment for one or more consecutive years and the total number of those consecutive years exceeds the total number of years that he worked in covered employment.

Govoni notes that the rule expressly requires that a break meet both conditions (a) and (b) for it to count as a break in service. He argues that this break does not satisfy condition (b). The trustees, however, point to the main difficulty with Govoni's argument, namely, the words "[c]ommencing August 1, 1976." These words suggest, as a matter of ordinary English, that (b) applies only to breaks that take place after that time. Moreover, it is here undisputed that the plan's funding and payments were predicated on the economic assumption that (b) applied only to post-August 1976 breaks in service. Finally, the plan was amended to include (b) only after ERISA expressly required plans to limit disqualifying breaks in service to those where

the number of consecutive 1-year breaks in service equals or exceeds the aggregate number of such years of service prior to such break.

29 U.S.C. § 1053(b)(3)(D). ERISA allows plans to apply its requirement prospectively to breaks occurring in plan years beginning after December 31, 1975 (August 1, 1976 in this case). 29 U.S.C. §§ 1053(b)(1)(F), 1061(b)(2). *See Coward v. Colgate Palmolive Co.*, 686 F.2d 1230, 1235 (7th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1526, 75 L.Ed.2d 948 (1983); *Van Fossan v. International Brotherhood of Teamsters Union Local 710 Pension Fund,* 649 F.2d 1243, 1246–47 (7th Cir. 1981); *Ponce v. Construction Laborers Pension Trust for Southern California,* 628 F.2d 537, 541 (9th Cir.1980). The date and language here would seem designed to satisfy ERISA's conditions. Thus, the trustees find support for their position in the Amendment's language, apparent purpose, and related practice.

Govoni argues it is not possible to read the language as the trustees wish because the definition says that the "conditions of *both* (a) and (b)" must be met. But, from a

purely logical point of view, one can view the whole of condition (b) as, in a sense, being met in instances falling outside (b)'s own built-in time limit. And, the drafters may have used this awkward phrasing in order to make clear that (a)'s "three-year" requirement is an essential part of the definition, even after 1976. (That is to say, a two-year "break" would not disqualify one previous year of coverage.) Govoni's argument—that condition (b) is intended to apply ERISA's rule to all who *retire* after August 1, 1976 even if their breaks occurred before—suggests one logical possibility. But there is no indication the amendment reflected this intent. And, as we have pointed out, there are important indications to the contrary. Like the district court, we find the trustees' interpretation more persuasive. Moreover, as the Second Circuit has stated, "[w]here both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Benefit Plan*, 698 F.2d 593, 601 (2d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *see also Ponce v. Construction Laborers Pension Trust for Southern California*, 628 F.2d at 542 ("It is for the trustees, not judges, to choose between various reasonable alternatives."); *cf. Palino v. Casey*, 664 F.2d 854, 858 (1st Cir.1981) ("In judging the actions taken by trustees in the course of managing an employment benefit plan, our inquiry is limited to determining whether the actions were arbitrary and capricious in light of the trustees' responsibility to all potential beneficiaries."); *Rueda v. Seafarers International Union of North America*, 576 F.2d 939, 942 (1st Cir.1978) ("Unless the trustees' interpretation of the plan is arbitrary and capricious, or without rational basis, it may not be disregarded.").

Govoni's second argument is that the amendment, on the trustee's interpretation, violates ERISA § 102, 29 U.S.C. § 1022, which states in relevant part:

(a)(1) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan ....

(b) The plan description and summary plan description shall contain the following information: ... circumstances which may result in disqualification, ineligibility, or denial or loss of benefits ...

The trustees failed to comply with this provision, for the summary plan description available to Govoni does not reveal that those with pre-1976 breaks will be treated more harshly than those with post-1976 breaks. Case law suggests, however, that to secure relief, Govoni must show some significant reliance upon, or possible prejudice flowing from, the faulty plan description. *Hillis v. Waukesha Title Co., Inc.*, 576 F.Supp. 1103, 1109–10 (E.D.Wis.1983); *Morse v. Stanley*, 566 F.Supp. 1455, 1459 (S.D.N.Y.1983); *Pollock v. Castrovinci*, 476 F.Supp. 606, 617–18 (S.D.N.Y.1979); *aff'd*, 622 F.2d 575 (2d Cir.1980); *cf. Palino v. Casey*, 664 F.2d at 859. And we can find no such reliance or prejudice here.

Govoni's break took place under the pre-1976 rules. When the plan was amended Govoni had already lost his past service credit, according to the terms of properly publicized rules. What he believed or did not believe about the new rules could not affect his previous actions.

The only conceivable prejudice to which Govoni points—and he apparently did so for the first time at oral argument here—concerns his decision to retire. He says that he might not have retired had he known that his pension would be smaller. His filed complaint, however, contains an attachment from a fund official stating that he was told about the rule and its effects on September 12, 1979. His complaint says he retired on September 14, 1979. It also says he applied for a pension

on November 13, 1979. Nothing in the record suggests that his retirement decision was irreversible (or could otherwise harm him) even after September 14, let alone before. Thus, finding no evidence of prejudice, we do not believe that the inadequate description in the plan invalidates application of the rule to Govoni.

Finally, Govoni argues that the trustees' interpretation violates ERISA's "parity" rule—*i.e.*, the ERISA provision, described at page 251, *supra*, requiring the trustees to insert provision (b) into the plan. 29 U.S.C. § 1053. He claims, relying on a district court case, that the trustees cannot make (b) prospective, unless they do so expressly. *Snyder v. Titus*, 513 F.Supp. 926, 937 (E.D.Va.1981). The short and conclusive answer to this claim is that the trustees made provision (b) prospective expressly, for that is what the words "[c]ommencing August 1, 1976" mean to do.

The judgment of the district court is *Affirmed.*