Joseph K. FLEMING,
Plaintiff/Appellant,

v.

WESTERN CONFERENCE OF TEAM-
STERS PENSION TRUST FUND,
Defendant/Appellee.

No. 85–1982.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 1, 1986.

Decided Oct. 23, 1986.

Robert E. Jesinger, Christopher E. Platten, Wylie, Blunt, McBride & Jesinger, San Jose, Cal., for plaintiff/appellant.

Tom C. Clark, II, Robert A. Gordon, Pillsbury, Madison & Sturo, San Francisco, Cal., for defendant/appellee.

Before SNEED, KENNEDY and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Joseph K. Fleming appeals a decision of the district court granting summary judgment for the Western Conference of Teamsters Pension Trust Fund. He claims that the district court incorrectly interpreted his pension agreement and allowed the trust

---

fund to pay him less than he was due. We affirm.

Joseph K. Fleming was a truck driver in the midwest from 1948 to 1960, during which time his employer contributed on his behalf to a pension plan administered by the Central States, Southeast and Southwest Areas Pension Fund Trust ("Central States"). He was credited with twelve years of service according to the terms of the Central States plan.

In 1960, Fleming moved to California, where his employers contributed on his behalf to a pension plan administered by the Western Conference of Teamsters Pension Trust Fund ("Western Conference"). By March 1966, he had been credited with eight years of service under the Western Conference plan. At that time he started his own trucking company.

Fleming was self-employed from March 1966 until December 1973. During that period he made no contributions to any pension plan and received no service credits.

From 1973 to 1977, Fleming returned to employment covered by the Western Conference plan and was credited with 3.8 years of service.

In 1977, Fleming became completely disabled and began to receive disability retirement benefits. Later, he received age retirement benefits. Both benefits were calculated on the basis of service credits corresponding to the years 1973–1977 only; earlier years of employment and earlier contributions to the two pension plans were not counted.

Fleming believed he should receive more, because of a reciprocal agreement made between Western Conference and Central States, whereby each recognized pension credits earned under the rules of the other. Western Conference refused to adjust his pension. After exhausting administrative remedies, Fleming sued in the United States District Court for the Northern District of California, seeking declaratory relief, damages and attorney's fees. Both parties stipulated to a statement of facts and both moved for summary judgment. The district court granted summary judgment for Western Conference. Fleming timely appealed.

The parties agree that the outcome in this case is determined by the language of the Western Conference plan; they disagree about the proper interpretation of that language. In reviewing the decision below, this court places itself in the same position as the district court, a grant of summary judgment is reviewed *de novo*. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). We accord broad deference to trustee decisions concerning eligibility for pension benefits, and will not reverse unless a decision is "arbitrary, capricious, made in bad faith, not supported by substantial evidence, or erroneous on a question of law." *Moore v. Provident Life and Accident Ins. Co.*, 786 F.2d 922, 927 (9th Cir.1986); *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1093 (9th Cir.1985).

Briefly, Western Conference argues that two circumstances prevent it from paying Fleming a larger pension under the reciprocal agreement: his break of service from 1966–1973, and his ineligibility for any benefit under the Central States plan. Fleming responds that his break in service is irrelevant under the Western Conference plan, and that the requirement of eligibility under the Central States plan is arbitrary and capricious. These disputes may be resolved by considering Fleming's status under the Western Conference plan in 1967 and 1977.

In December 1967, Fleming had been self-employed and had not made contributions to any pension plan for over a year. According to the regulations of the Western Conference plan, an individual "shall be considered to have a break in service at the end of any calendar year ... if in the two calendar years ending with such calendar year he has had less than 600 Covered Hours...." Fleming admits that, in 1966 and 1967, he had a total of 440 Covered Hours and that this constituted a break in service.

Article VIII of the plan, entitled "Termination Benefits," provides:

At the time an Employee's Service is broken, his rights shall be determined as specified in (a) and (b) below. The Termination Benefits provided in this Article shall be in full settlement of all his rights and interests under the Plan for Service before such break in Service.

(a) If, at the time of the break in Service, he has had a total of at least 15 years of Unbroken Service and has had Employer Contributions made on his account for a total of at least 3,000 Covered Hours, he shall be eligible for a Cash Termination Benefit.

(b) If he has met the conditions set forth in subsection (a) for a Cash Termination Benefit, has attained his 52nd birthday, and has not elected to receive his Cash Termination Benefit, he ... shall be eligible for a Vested Retirement Benefit....

The record does not reveal that Fleming ever applied for a Cash Termination Benefit, and since he was only 50 years old at the end of 1967 he was not eligible for a Vested Retirement Benefit. Western Conference regards this absence of Termination Benefits as "full settlement" for all of Fleming's work up to 1967, and the language of Article VIII supports its position.

When Fleming became disabled in 1977, he had been covered by the Western Conference plan for 3.8 years, not counting his service from 1948 to 1966. In arguing that those earlier years should count, Fleming invokes Article XIV of the plan, entitled "Partial Retirement Benefits." This is the Article that, in certain circumstances, recognizes service credits earned under other pension plans (such as the Central States plan) as credits under the Western Conference plan. According to section 6 of this Article:

Subject to the limitations of Section 10 of this Article and anything in Article VIII to the contrary notwithstanding, a person who has not received a Cash Termination Benefit and who has 3,000 Cover-

ed Hours shall be eligible for a Partial Age Retirement Benefit or a Partial Disability Retirement Benefit, whichever is applicable, on any date if, on such date, he meets the following conditions:

(a) considering his Combined Service as Service and his Combined Covered Hours as Covered Hours, he either meets the conditions set forth in Section 1 of Article III [Age] or ... Section 1 of Article VII [Disability], and

(b) a partial pension is payable to him under a Reciprocating Plan if a Partial Retirement Benefit is payable under this Plan.

Both Article III § 1 and Article VII § 1 required Fleming to have "fifteen years of Unbroken Service" to qualify for the benefits he sought.

Fleming claims that his years of work from 1948 to 1966 should have counted as "15 years of Unbroken Service" when he retired in 1977. He concedes that Article VIII appeared to cancel all his rights and interests in those service years back in 1967, but he replies that Article XIV applies "anything in Article VIII to the contrary notwithstanding."

■ Fleming's emphasis on Article VIII is misplaced. That Article describes one consequence of a break in service: conditional qualification for certain termination benefits. But a break in service has other consequences independent of Article VIII, and it is unlikely that the "notwithstanding" language in Article XIV was intended to negate the unbroken service requirement which appears throughout the plan. After 1967, it could no longer be said that Fleming had "15 years of Unbroken Service" for purposes of Article III § 1 and Article VII § 1, so he could not qualify for Partial Benefits under Article XIV. Fleming argues that, even though he had a *break* in service in 1967, his years of service remained *unbroken*. Western Conference's rejection of this argument was not arbitrary and capricious.

■ There was a second reason for disqualification: he did not qualify for a Cen-

tral States partial pension as required by Article XIV, Section 6(b) (quoted above). The clear intent of the Partial Retirement Benefits provisions in the Western Conference plan is to pool the resources of Western Conference and certain other trust funds for the benefit of employees who have contributed to both. It is not arbitrary and capricious for Western Conference to insist that contributions from other funds be available before it pays a Partial Retirement Benefit.

AFFIRMED.