Angelo E. TAFOYA, Plaintiff–Appellee,

v.

WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Defendant–Appellant.

No. 89–55480.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1990.

Decided July 13, 1990.

William F. Highberger, Gibson, Dunn & Crutcher, Joseph J. Bader, Los Angeles, Cal., for defendant-appellant.

Ronald Dean, Pacific Palisades, Cal., for plaintiff-appellee.

Before HUG, BEEZER and NOONAN, Circuit Judges.

BEEZER, Circuit Judge:

The Western Conference of Teamsters Pension Trust Fund (the "Fund") appeals a grant of summary judgment in favor of Tafoya, directing the fund to grant Tafoya's request for pension benefits if it determines that his break in service was involuntary. We reverse.

I

Tafoya worked as a Teamster from 1955 to 1963. In 1963, he suffered a back injury. He was totally disabled from 1963 through 1965. In 1965, he was again able to work, but not as a truck driver. He worked as a salesman and later in broadcasting. He did not work again as a Teamster. In 1985, Tafoya reached early retirement age and applied for pension benefits from the Fund. His request was denied.

Under the terms of the pension plan in effect in 1965, Tafoya was not eligible for benefits until he became vested in the plan. Vesting required 15 years of unbroken service. A break in service would occur if a participant failed to perform "covered" employment, that is, to work as a Teamster, for two years.[1] If a participant were totally disabled from all work, then no break in service would be charged against him. Otherwise, a two-year break in service would cancel all previously earned credits and the participant would no longer be considered an "employee" under the plan. The plan was amended in 1976 to reduce the vesting period to 10 years. The break in service rule was not changed.

The parties agree that under the 1965 plan, Tafoya incurred no break in service before 1965. At that point, Tafoya had accumulated 11 years of credit. The parties also agree that had Tafoya remained totally disabled, no break in service would have occurred after 1965. Tafoya argues that his partial disability, because involuntary, should be treated the same as his total disability. He argues that he remained an "employee" and hence an "active participant" in the plan after 1965 and became vested when the terms of the plan were changed in 1976.

The district court agreed and held that if Tafoya's break in service were involuntary, he would be entitled to benefits. It then remanded the case to the Fund to determine whether Tafoya's break was in fact involuntary. The Fund appeals.

II

We must first determine whether the district court had jurisdiction over this case.

Tafoya brought this declaratory judgment action under both Section 302(e) of the Labor Management Relations Act (LMRA), codified at 29 U.S.C. § 186(e), and Section 502(a)(1)(B) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). We agree with the parties that jurisdiction was proper under the LMRA. Section 302 of the LMRA, codified at 29 U.S.C. § 186, is a criminal statute that forbids an employer from making any payment to a person or organization representing its employees. Section 302(c)(5), 29 U.S.C. § 186(c)(5), creates an exception for funds designed to be used for the "sole and exclusive benefit" of employees, such as pension funds. Section 302(e), 29 U.S.C. § 186(e), grants jurisdiction to the federal courts to enforce this provision. *See Elser v. I.A.M. Nat'l Pension Fund*, 684 F.2d 648, 654–55 (9th Cir.1982), *cert. denied*, 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983). Exercising this jurisdiction, we and other courts have recognized the principle that when an eligibility requirement arbitrarily denies pension bene-

---

1. The Fund states that this includes thousands of different types of jobs in addition to truck driving.

fits, it does not exist for the "sole and exclusive benefit" of an employee and violates § 302(c)(5).[2] Such a violation constitutes a "structural defect" in the plan and may be declared void. *See Burroughs v. Board of Trustees of Pension Trust Fund for Operating Engineers*, 542 F.2d 1128, 1130–31 (9th Cir.1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); *Alvares v. Erickson*, 514 F.2d 156, 164–65 (9th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). Tafoya alleges that by failing to account for the involuntary nature of a break in service, the Fund's pension plan has such a defect. This "fits within the 'structural' deficiency category" and the district court had jurisdiction under the LMRA to hear Tafoya's claim. *Wilson v. Board of Trustees*, 564 F.2d 1299, 1300 (9th Cir.1977).

■ We disagree that jurisdiction was proper under ERISA. ERISA became effective on January 1, 1975. Tafoya's break in service occurred in 1965. His status as an employee and participant, even under the 1976 plan, is dependent upon a determination of his continuing status under the 1965 plan. When benefits are denied under a pre–1975 plan provision that is unambiguous and nondiscretionary, ERISA does not apply. *Smith v. Retirement Fund Trust of the Plumbing, Heating and Piping Industry of So. Calif.*, 857 F.2d 587, 590 (9th Cir.1988); *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1497, 1503 (9th Cir.1984). The terms of this 1965 plan are unambiguous. The plan authorizes liberal application of its rules, but this does not make application of an otherwise straightforward rule discretionary. Moreover, Congress chose not to make ERISA's eligibility standards retroactive. *Ponce v. Construction Laborers Pension Trust for So. Calif.*, 628 F.2d 537, 541 (9th Cir.1980). We conclude that ERISA does not provide a jurisdictional basis for Tafoya's claim.

■ We also must determine whether we have jurisdiction over this appeal. We conclude that we do. The Declaratory Judgment Act, 28 U.S.C. § 2201, does not require a final determination of damages. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937). Similarly, failure to establish legal rights with precision does not make a declaratory judgment less final. *Planet Ins. Co. v. Mead Reinsurance Corp.*, 789 F.2d 668, 670 (9th Cir.1986). The district court's judgment, though directing that the case be remanded, did reach the question of Tafoya's legal rights. It therefore constituted a final, appealable order and we have jurisdiction over this timely appeal under 28 U.S.C. § 1291.

■ We review the district court's grant of summary judgment *de novo*. *Fleming v. Western Conf. of Teamsters Pension Fund*, 803 F.2d 441, 442 (9th Cir. 1986). The actions of pension fund trustees in establishing and applying eligibility rules will be upheld unless they are arbitrary and capricious. *Id.*; *Hurn v. Retirement Fund Trust of the Plumbing, Heating & Piping Industry of So. Calif.*, 703 F.2d 386, 390 (9th Cir.1983).

### III

Tafoya argues that the Fund's break in service rule is arbitrary in two respects. First, he argues, by failing to exclude all involuntary breaks, the rule creates a "structural defect" in the plan. Second, he argues, application of the rule to him was arbitrary and capricious. We reject both arguments in turn.

### A. Structural Defect

■ A break in service rule is a common device used by pension plans to determine eligibility. Such a rule is not a "structural defect" per se, *see Burroughs*, 542 F.2d at 1131; *Ponce*, 628 F.2d at 542–43; unless it is clearly arbitrary. *Sailer v. Retirement Fund Trust of Plumbing, Heating, Piping Industry of So. Calif.*, 599 F.2d 913, 914–15 (9th Cir.1979).

---

2. *See Ponce v. Construction Laborers Pension Trust for So. Calif.*, 628 F.2d 537, 542–45 (9th Cir.1980) (group impact); *Hurn v. Retirement Fund Trust of the Plumbing, Heating & Piping Industry of So. Calif.*, 703 F.2d 386, 390 (9th Cir.1983) (individual impact).

We have recognized that under some circumstances a break in service rule may be arbitrary if it is applied in a way that fails to consider whether the break is voluntary. In *Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir. 1972), we considered the case of an employee who had worked sufficient years to vest in a pension plan but had not yet reached retirement age. "Covered" employment was suddenly unavailable, and Lee incurred an involuntary break in service that prevented him from receiving his benefits. We held that because the break was due to factors completely out of Lee's control, cancellation of his entire vested interest was unreasonable and hence invalid. *Id.* at 1312. We have often noted since that once a participant is otherwise vested, a subsequent involuntary break in service will not deprive a participant of benefits. *See e.g., Harm*, 701 F.2d at 1305.

We have not, however, held that such a rule constitutes a "structural defect" because it fails to exclude involuntary breaks. Rather, in *Lee* we observed that were the claimant not vested, the break in service rule would not be viewed as arbitrary or unreasonable. *Id.* at 1311. We recognized that "even if an employee, through no fault of his own, is *prevented* from completing a minimum period of employment, he may be denied a pension." *Id.* (emphasis added).

We have since applied the *Lee* distinction to unvested claimants. In *Siles v. ILGWU Nat'l Retirement Fund*, 783 F.2d 923 (9th Cir.1986), a case brought under ERISA, we applied *Lee* to an employee who was laid off three years before vesting. She had worked 17 years before suffering an involuntary break in service. We held that because she had not vested by the time the rule was applied to her, denial of benefits was not arbitrary. *Id.* at 929–30.

■ Tafoya nevertheless argues that the 1965 break in service rule is defective because it discriminates between total and partial disability. He argues that if the Fund allows one exception, then it must treat all involuntary breaks the same because they equally prevent an employee from performing "covered" employment. We disagree. A break in service rule will

not be viewed as arbitrary because it excludes a small percentage of otherwise eligible employees. *Ponce*, 628 F.2d at 542.

Tafoya argues that encouraging industry loyalty is the primary purpose of a break in service rule and that purpose is not furthered by excluding employees such as himself. *See, e.g., Lee*, 453 F.2d at 1312 (approving of break in service rule "calculated to induce competent employees to remain in the industry"). But he concedes that actuarial soundness is another purpose of the rule. We have recognized that actuarial soundness can be influenced by the exclusion of a small number of employees. *See Ponce*, 628 F.2d at 543. And we are reluctant to impose notions of actuarial soundness on a plan more than two decades after its inception. *Wilson*, 564 F.2d at 1302. This is particularly true concerning break in service rules. Break in service rules promulgated pursuant to the plan represent policy choices and "fall more fully to the trustee's discretion" than other eligibility requirements. *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund*, 701 F.2d 1301, 1306 n. 7 (9th Cir. 1983).

■ We conclude that the 1965 break in service rule does not constitute a "structural defect" solely because it excepts some involuntary breaks but includes others. The Fund presents numerous practical and administrative reasons for its rule. The burden remains on Tafoya in the first instance to show that the rule is unreasonable. *Music v. Western Conference of Teamsters Pension Trust Fund*, 712 F.2d 413, 419 (9th Cir.1983). This Tafoya has failed to do.

**B. Application of the Rule to Tafoya**

■ Tafoya next argues that application of the break in service rule to him is arbitrary. He argues that but for his involuntary break, he would have been vested by the time he applied for benefits, making *Lee* applicable to his case.

We find this argument unpersuasive. Tafoya's argument turns on the assumption that he was an "employee" at the time

of the adoption of the 1976 plan. This argument is contingent upon his remaining an employee under the 1965 plan, until the 1976 plan became effective. But Tafoya *never* vested under the 1965 plan. At the time of his break in service, the vesting period was 15 years. He had no expectation that the vesting period would later be reduced. The *Lee* exception simply does not apply to his case.

We find distinguishable on the same ground the decisions of district courts of this circuit that have generously applied *Lee*'s vesting requirement. In *Shishido v. SIU–Pacific District–PMA Pension Plan,* 587 F.Supp. 112, 119 (N.D.Cal.1983), a Japanese–American merchant mariner was prohibited from working by a government decree later declared illegal. He had not vested before the involuntary break in service, but accrued sufficient years after going back to work that his combined total satisfied vesting requirements. Similarly, in *Walker v. Construction Laborers Pension Trust Fund,* 6 E.B.C. 1412, 101 Lab. Cas. (CCH) ¶ 11,172, 1984 WL 3156 (C.D. Cal.1984), the employee's total time before and after his involuntary break satisfied vesting requirements. In both cases, the claimant had involuntarily left covered employment and then returned to satisfy the vesting requirements in effect at the time he was employed.

Under the most generous reading of his case, if Tafoya were to be viewed as eventually satisfying the plan's vesting requirements, it would be only because the plan changed its requirements after his break in service. Thus Tafoya never worked the number of years required by the plan in effect at the time he was employed. *Siles,* 783 F.2d at 929–30. He lost his status as an employee under that plan at least ten years before the 1976 plan came into effect.

We hold that because Tafoya never vested under the terms of the plan in effect at the time of his break in service in 1965, the Fund's failure to consider the involuntariness of his break in service was not arbitrary and capricious.

* Elizabeth Dole has been substituted for William

IV

There is no basis in ERISA, the LMRA, or the 1965 or 1976 plan to afford Tafoya the relief he requests. The district court's grant of summary judgment is

REVERSED.