**Kenneth SCHENDEL, Plaintiff,**

v.

**PIPE TRADES DISTRICT COUNCIL NO. 36 PENSION PLAN, et al., Defendants.**

No. C–93–20732 PVT.

United States District Court, N.D. California, San Jose Division.

March 16, 1995.

Anthony Karachale, Horan, Lloyd, Karachale, Dyer, Horan & Schwartz, Inc., Monterey, CA, for plaintiff.

Neil Goldstein, Tom Quinlan, McCarthy, Johnson & Miller, San Francisco, CA, for defendants.

## ORDER FOLLOWING CROSS–MOTIONS FOR SUMMARY JUDGMENT

TRUMBULL, United States Magistrate Judge.

On October 25, 1994, plaintiff's and defendants' cross-motions for summary judgment came on for hearing. Pursuant to court order, the parties submitted additional briefing. The motion came under submission on January 26, 1995.

Plaintiff Kenneth Schendel sued Pipe Trades District Council No. 36 Pension Plan and the Trustees of the Plan [hereinafter collectively "defendants"] in an effort to obtain an additional 6.5 years of credit toward calculating his retirement benefits. The defendants denied Mr. Schendel's request on the basis that a "break in service" in Mr. Schendel's employment caused a forfeiture of 6.5 years of service.

The issue before the court is whether the defendants abused their discretion in applying a break in service rule to Mr. Schendel when that rule is not stated in the current plan. For the reasons set forth below, the court GRANTS plaintiff's motion for summary judgment and DENIES defendants' motion for summary judgment.

## I. Background

The material facts are not in dispute. Defendants' Plan ("the Plan") provides retirement benefits to members of plumbing trade unions. The Plan is an employee benefit plan within the meaning of Section 3(2)(A) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(2)(A). The Plan was originally adopted in 1954 and since then has been amended numerous times.[1]

The Plan participants' monthly retirement benefits are determined by the number of years of credited service in the union. Mr. Schendel earned six and one half years of service between 1954 and 1961. From July 1, 1961 through December 31, 1966, Mr. Schendel had a break in service during which time he did not earn any service years toward retirement. This break amounted to five and one half calendar years or six Plan years.[2]

Mr. Schendel returned to active membership with the union earning 22.95 years of benefits between January 1, 1967 and September 25, 1990, when he retired. Shortly after Mr. Schendel retired, he applied for benefits. In December 1990, the Plan Administrator determined that Mr. Schendel was not entitled to credit for his 6.5 years of service between 1954 and 1961. The Board denied Mr. Schendel's appeal on October 25, 1991.

Mr. Schendel's claim for his pre–1961 service is based on defendants' 1987 Plan which was in effect at the time of his retirement. Pursuant to the 1987 Plan, credited service may be lost due to a break in service only under the following circumstance:

---

1. The parties provided ten plans or plan amendments: the original Plan of 1954; 1958 Amendment to 1954 Plan; 1963 Plan; 1965 Second Amendment to 1963 Plan; Seventh Amendment to 1963 Plan; Fifteenth Amendment to 1963 Plan; 1976 Plan Provision; 1979 Plan Provision; 1987 Plan Provision; and 1991 Plan Provision.

2. The Plan year originally ran from July 30 to June 1 and then was changed to January 1 to December 31, thus creating a "short" year in 1964.

**Loss of Accumulated Past and Future Service**

An employee who has not yet qualified for a pension, and who fails to be credited with at least eighty (80) hours in each of two (2) consecutive Plan Years, shall suffer a break in service.

Such break in service shall become permanent and the employee's previously accumulated non-vested years of Credited Service shall not thereafter be taken into account, if his consecutive one (1) year breaks-in-service, i.e., failure to be credited with 80 hours in any Plan Year, thereafter *equal or exceed the greater of five or the aggregate number of years of service credited prior to the break.*

(emphasis added). If the 1987 Plan applies, Mr. Schendel is entitled to credit for his pre–1961 service because Mr. Schendel had a break in service of only 6 years, which was less than his total accumulated service of 6.5 years.

However, the defendants applied a break in service rule from an earlier plan. According to the Plan Administrator, Mirth Lundal, "[t]he break in service provision outlined in the current plan was *not* in effect at the time of [Mr. Schendel's] break in service. The Plan booklet issued in 1964 indicates that ... non-vested credit was forfeited if an employee failed to work at least 80 hours under an applicable collective Bargaining Contract or agreement in each of two consecutive plan years. The only exceptions listed to the break in service provision were disability or military service." 3/6/91 letter to Mr. Schendel attached as exhibit 11 to Joint Statement.

On appeal, the Board of Trustees confirmed denial of the 6.5 service credits, informing Mr. Schendel: "The basis of the Board of Trustees' action is that it is within their discretion to apply the pre-ERISA break in service rules which were in effect under the Plan at the time your break in service caused a permanent forfeiture of your pension benefit credit."

Although not raised by the Plan Administrator or the Board of Trustees, defendants also now assert Mr. Schendel is precluded from recovery because he is barred by the statute of limitations, by laches and by undue delay.

## II. Standard of Review For Summary Judgment

 The purpose of summary judgment is to avoid a trial when there is no genuine factual issue and the moving party is entitled to judgment as a matter of law. *Bloom v. General Truck Drivers, Office, Food & Warehouse Union,* 783 F.2d 1356, 1358 (9th Cir. 1986). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is a "genuine" issue of material fact only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

 Entry of summary judgment is mandated against a party if, after adequate time for discovery and upon motion, the party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). This court, however, must draw all justifiable inferences in favor of the non-moving parties, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520, 111 S.Ct. 2419, 2434, 115 L.Ed.2d 447 (1991). The court will consider the cross motions for summary judgment now before it with these standards in mind.

## III. Analysis

By cross motions, the parties presented the following issues: (a) whether Mr. Schendel's claim is barred by the statute of limitations, laches and undue delay; (b) what standard of review the court should employ in reviewing the Plan Administrator's decision; (c) whether the Plan Administrator abused his discretion by denying Mr. Schendel a credit of 6.5 years towards his retirement

benefits in light of the plain language of the Plan; and (d) whether there are financial concerns which justify the defendants' decision.

## A. Statute of Limitations, Laches, Undue Delay

■ The issue is when Mr. Schendel's cause of action accrued. Under ERISA, the court looks to state law in determining the statute of limitations. *Flanagan v. Inland Empire Electrical Workers Pension Plan and Trust*, 3 F.3d 1246, 1251–52 (9th Cir. 1993). The time period in California is four years. Cal.Code Civ.Proc. § 337.

■ An ERISA cause of action accrues upon "a clear and continuing repudiation" of a claim. *Martin v. Construction Laborer's Pension Trust*, 947 F.2d 1381, 1384 (9th Cir. 1991). Relying on *Martin*, defendants assert Mr. Schendel's claim was clearly repudiated more than four years before he filed suit. However, *Martin* supports the plaintiff's position.

In *Martin*, the plaintiff was informed by the Pension Committee in 1979 that several prior years of service were not counted toward his retirement due to a break in service. The Committee informed the plaintiff he could appeal to the Appeals Committee. The plaintiff appealed to the Appeals Committee which rejected plaintiff's challenge. No other appeal procedure was contemplated by the plan.

Five years later, the plaintiff requested reconsideration of his case. The plaintiff made a complaint with the Pension Committee, and then with the Appeals Committee. The Appeals Committee stated the statute of limitations had run and reserved this defense. The plaintiff then filed suit. The Ninth Circuit found that the plaintiff's cause of action ran after the original decision and appeal, and did not commence anew with a request for reconsideration coming five years later.

Defendants contend Mr. Schendel was on notice when he received a letter on February 8, 1985, from Ronnie Eaves, an Office Manager for the United Association of Journeymen, enclosing a summary of pension credits which states Mr. Schendel lost 6.5 years due to a break in service. Joint Statement, hereinafter "JS" at 21; JS Exhibit 7. The February 8, 1985 letter does not state that the computation is a final decision nor does it state that Mr. Schendel had appeal rights. The letter contains only a "suggestion" that Mr. Schendel contact the Trust itself. Furthermore, the author of the letter is an "office manager." Defendants did not say the office manager was empowered to make final decisions. These facts distinguish this case from *Martin*.

Moreover, plaintiff received periodic Reports of Credited Service containing the following statement: "Data appearing is based upon all statistical information presently available to the administrator but may be subject to error. The amount of actual credit will be verified at the time of retirement." JS at 24. A reasonable interpretation of this statement is that plaintiff's final determination of service credits would not be made until he applied for retirement.

The statute of limitations began to run when Mr. Schendel's appeal was denied on October 25, 1991. JS at 24–31. This suit was filed on July 1, 1993, well within the four year period. Thus, Mr. Schendel's claim was timely filed for purposes of the statute of limitations, for laches and undue delay defenses.

## B. Standard of Review

■ The threshhold issue the court must address is the appropriate standard of review. Pursuant to ERISA, a beneficiary of a plan may bring a civil action against the plan administrator to recover, enforce or clarify benefits. 29 U.S.C. § 1132(a)(1)(B). "Where the plan vests the administrator with discretionary authority to determine eligibility for benefits ... a district court may review the administrator's determinations only for an abuse of discretion." *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1471 (9th Cir.1993), *amended* 1993 U.S.App. LEXIS 36315, *citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1988); and *Eley v. Boeing Co.*, 945 F.2d 276, 278 (9th Cir.1991). If the plan administrator does not have discretion within the

plan, then a *de novo* review is utilized. *Firestone*, 489 U.S. at 113–17, 109 S.Ct. at 956–57.[3]

■ A plan administrator has discretionary authority when vested with the power "to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115, 109 S.Ct. at 956. The determination must implicate an evaluative or judgmental function. *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1324–25 (9th Cir.1992), *amended*, 1992 U.S.App. LEXIS 31377 (wherein the Ninth Circuit found a plan administrator had discretionary authority in deciding whether employees were entitled to severance payments in a company buy out because the administrator determined whether employees were offered "substantially equivalent employment."). *See also Eley v. Boeing Co.*, 945 F.2d 276, 278–79 (9th Cir.1991).

■ In this case, defendants have discretionary authority. Indeed, the Plan specifically provides:

> The Board of Trustees shall have full discretionary authority to interpret Plan language and to decide all claims or disputes regarding right, type, amount, duration of benefits, or claim to any payment from this Trust.

JS at 7., Plan as Revised January 1, 1991. This language invokes an evaluative and judgmental function because the administrator must determine eligibility by interpreting the Plan and examining relevant facts. Because the plan language confers discretionary authority upon the plan administrator, the court reviews the defendants' decision for an abuse of discretion.

### C. Interpretation of the Plan

■ At a minimum, plan administrators "abuse their discretion if they render decisions without any explanation, or construe provisions of the plan in a way that conflicts with the plain language of that plan." *Taft*, 9 F.3d at 1472 (citations omitted). Hence, even under the deferential abuse of discretion standard, a court need not uphold an administrator's decision which is in conflict with the plan language.

A brief history of the Plan is necessary in order to interpret it. From 1958 to 1975, the Plan provided that a covered employee who failed to work the requisite number of hours for two consecutive years, forfeited all service credits. JS at 18.

On July 1, 1976, the Plan became subject to ERISA which protected employees (especially women on a prolonged absence due to child rearing) by maintaining their place on a vesting schedule if their absence from work is no longer than the time worked before taking leave. Barbara J. Coleman, *Employee Retirement Income Security Act*, 40–42 (4th Ed.1989). Subsequently, the Retirement Equity Act, adopted in 1984, in part required break in service rules to allow employees leave up to five years without losing credit for pre-break service, even if the service was less than the period of the break. Coleman, *supra.* *See also* 29 U.S.C. § 1053(b)(3)(D).[4] This rule is called the "rule of parity."

From July 1976 onward, the defendants incorporated ERISA's break in service requirements in their plans ultimately restating the rule of parity in the 1987 Plan (*i.e.*, no loss of credits unless the break either equals or exceeds the greater of five years or the total number of years of service accumulated). However, Congress did not require the rule of parity to be adopted retroactively:

> In computing the period of service under the plan ... all of an employee's years of service with the employer or employers maintaining the plan shall be taken into

---

3. Regarding its use of the terms "arbitrary and capricious" even after the U.S. Supreme Court decided *Firestone*, the Ninth Circuit commented that their review of cases under the old standard has been "consistent with the structures of the abuse of discretion standard...." *Taft*, 9 F.3d at 1469 n. 2 (citations omitted).

4. 29 U.S.C. § 1053(b)(3)(D) states: "[I]n the case of nonvested participants, years of service with the employer or employers maintaining the plan before any period of consecutive 1–year breaks in service shall not be required to be taken into account if the number of consecutive 1–year breaks in service within such period equals or exceeds the greater of—(I) 5, or; (II) the aggregate number of years of service before such period."

account, except that the following may be disregarded:

(F) years of service before this part first applies to the plan if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date....

29 U.S.C. § 1053(b)(1)(F). The statute does not specify whether a plan must explicitly state that it is incorporating or deleting prior plans.

In this case, none of the revisions, including the 1987 Plan, contain language referring to pre–1976 break in service rules. Hence, this court must decide whether it is an abuse of discretion for a Plan administrator to apply a pre–1976 break in service rule when the current plan is silent as to the effect of prior plans and when the current plan rule would credit a participant's prior service.

Because the Ninth Circuit has not directly addressed this issue, we look to other jurisdictions for guidance. While the plaintiff relied on *Snyder v. Titus*, 513 F.Supp. 926 (E.D.Va.1981), and the defendant on *Redmond v. Burlington Northern R. Co. Pension Plan*, 821 F.2d 461 (8th Cir.1987), neither case is dispositive and both cases are factually distinct from the case at hand. However, the reasoning of the *Snyder* court is instructive.

In *Snyder*, the employee's failure to work in covered employment during certain years constituted a break in service as defined by the original plan. An amended version of the plan, which was in effect when the employee applied for benefits, was silent as to the years he did not work. Nevertheless, the plan trustees determined the employee to be ineligible based on the break in service rule contained in the original plan.

The *Snyder* court held that the plan trustees' decision to apply the rule in the original plan was arbitrary and capricious (the pre-*Firestone* standard). In reaching this conclusion, the court noted that when a plan has been amended, eligibility is generally determined using the plan in effect at the time the employee's application is filed. The court also pointed out that the amended plan contained no reference to the original plan and

that the break in service rule in the amended plan conflicted with the break in service provision in the original plan. Allowing the trustees to pick and choose provisions from prior versions, the court concluded, would "open the door to a shell game in the administration of pension plans, fraught with potential abuse and caprice." *Snyder*, 513 F.Supp. at 935. *See also Douglas Cousin v. New Orleans S.S. Assn*, 16 Employee Benefits Cas. (BNA) 1052, 1992 WL 266085 (E.D.La.1992) (wherein the court found an abuse of discretion when the plan administrator applied a rule not specifically stated in the plan).

*Redmond* is not inconsistent with *Snyder*. In *Redmond*, the employer disregarded service the employee earned prior to a break in service. In doing so, the employer relied on a break in service rule that was contained in versions of the plan that were adopted prior to the enactment of ERISA. The employee argued that the administrator's determination was incorrect because the plan in effect when the employee applied for benefits did not specifically incorporate the break in service rules of the pre-ERISA plans.

The *Redmond* court disagreed, holding that a post-ERISA plan need not incorporate language from the pre-ERISA plan if the effect of the break in service rules in both plans is the same. *Redmond*, 821 F.2d at 468. The court further noted that although the post-ERISA plan did not contain the precise break in service rule contained in the pre-ERISA plan, the difference in language did not affect the employee's rights. The *Redmond* court distinguished *Snyder* in this regard. *Id.*

 The lesson to be gleaned from *Snyder* and *Redmond* is that if a new plan confers a benefit not available under the old plan, it is incumbent upon the plan administrators to make clear how the rules will be applied otherwise they abuse their discretion.

In this case, the 1987 Plan was in effect when plaintiff retired. The 1987 Plan provides that breaks "shall not be taken into account" unless consecutive one year breaks "equal or exceed the greater of five years or the aggregate number of years of service

credited prior to the break." As defendants admit, under this rule, Mr. Schendel's pre–1961 service counts for purposes of calculating his benefits.

Although empowered by statute to retain old plan rules, defendants did not incorporate prior plans in the 1987 Plan nor use language which would have had the same effect as the prior break in service rules. Instead, defendants simply defined the old rules out of existence.

Defendants abused their discretion by denying Mr. Schendel 6.5 years of credit toward calculating his retirement benefits. Mr. Schendel's benefits must be calculated by reference to the 1987 Plan. To hold otherwise would require Mr. Schendel and other plan participants to determine their benefits by referencing numerous plan changes and by guessing which plan rules applied to them.

Defendants also relied on two other cases which may be disposed of quickly, *Tafoya v. Western Conference of Teamsters Pension Trust Fund*, 909 F.2d 344 (9th Cir.1990); and *Govoni v. Bricklayers Local 5 Pension Fund*, 732 F.2d 250 (1st Cir.1984).

In *Tafoya*, the pension plan charged participants for a two-year break in service unless the break in service was due to a total disability. The plaintiff accumulated 11 years of service before a partial disability prevented him from working. Subsequently, the plan was amended to reduce the vesting period from 15 years to 10 years. Plaintiff argued that because his disability was involuntary, the defendant acted arbitrarily in applying the break in service rule in his case. The court disagreed, reasoning that the plaintiff's rights never vested and that he had no expectation that the vesting period would be changed. In contrast to the plaintiff in *Tafoya*, Mr. Schendel was a plan participant when the break in service rule was changed, thus altering his expectations.

The *Govoni* court upheld application of an old break in service rule which was expressly reiterated in the current plan. 732 F.2d at

250–51. Here, the plaintiff contests the application of an unstated rule.

*Tafoya* and *Govoni* do not change the analysis above. Hence, Mr. Schendel's benefits must be calculated pursuant to the 1987 Plan.

### D. Substantial Unanticipated Costs

■ Finally, defendants argued that even if they abused their discretion, financial concerns justify their decision. The court is not aware of any Ninth Circuit authority addressing this issue, however, other courts have considered whether either party's interpretation has an adverse impact on a Plan's stability due to substantial unanticipated costs. *See Kennedy v. Electricians Pension Plan, IBEW No. 995*, 954 F.2d 1116, 1123 (5th Cir.1992) (citations omitted); *Batchelor v. International Brotherhood of Electrical Workers Local 861*, 877 F.2d 441, 445 (5th Cir.1989); and *Snyder*, 513 F.Supp. at 933–34.

Substantial unanticipated costs are gauged by contrasting the possible costs of a party's plan interpretation against the Plan's total assets. 954 F.2d at 1123 (citations omitted). A cost of 1.89% of a plan's total assets has been found not substantial whereas a 5.5% cost has been found to be substantial, though not unanticipated. *Kennedy*, 954 F.2d at 1123 n. 12.

In this case, the defendants calculated that if plaintiff's interpretation is accepted, other participants might make claims resulting in an increase in unfunded liability of approximately $2.2 million. Kaufman Third Declaration.[5] The net asset market value of the Fund in December 1993 was $107,600,880. Kaufman Third Declaration, Exhibit 1, page 9. This amounts to a 2.04% impact. Although perhaps unanticipated, a 2.04% cost to the Plan is not substantial. Hence, financial worries do not excuse the defendants' denial of Mr. Schendel's 6.5 years of service credits.

---

5. Due to a fire in 1982, records were destroyed which might have allowed a reconstruction of the number of participants who had a break in service pre-ERISA and were employed under the new plan. Defendant's method of calculation, though probably inexact, is accepted for the purposes of this analysis.

## IV. Attorney's Fees

The civil enforcement provisions of ERISA state that, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The factors which should be considered are:

(1) The degree of the opposing parties' culpability or bad faith;

(2) The ability of the opposing parties to satisfy an award of fees;

(3) Whether an award of fees against the opposing parties would deter others from acting under similar circumstances;

(4) Whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and

(5) The relative merits of the parties' positions.

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980) (citations omitted).

Here, defendants did not act in bad faith because the law on the issue before the court has not been decided in this circuit and both parties' positions had merit. On the other hand, defendants have the ability to satisfy an award of fees; plaintiff's suit causes the court to address a significant legal issue; and this decision may deter other parties from acting similarly.

Further, the Ninth Circuit has also commented that "[i]f a plan participant or beneficiary prevails in an action to enforce his rights under the plan, he ordinarily should recover attorney's fees in the absence of special circumstances making an award unjust." *Smith v. Retirement Trust Fund,* 857 F.2d 587, 592 (9th Cir.1988) (citations omitted). "ERISA, like the Civil Rights Acts of 1871 and 1964, and the Labor–Management Reporting and Disclosure Act, is remedial legislation which should be liberally construed in favor of protecting participants in employee benefits plans." *Smith v. CTMA–IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir.1984).

In view of the foregoing, plaintiff's motion for attorneys fees is GRANTED. In compliance with Local Rule 270, plaintiff shall meet and confer with defendants in a good faith attempt to resolve the amount prior to filing an application within sixty days of the date this order is filed.

## V. Conclusion

In light of the foregoing, plaintiff's motion for summary judgment is GRANTED and defendants' motion for summary judgment is DENIED. Further, plaintiff's motion for attorney's fees is GRANTED.