Robert MATHERS; Randy Apple; Ward Apple; Marion Parcher; Richard L. Cornwell; Richard Leonard; Major Young, Jr.; Henry King; Randy McDiarmid; Glenn H. Fussman; Daniel F. Smith; Larry G. Smith; William P. Smith; Doug VanCamp; Larry R. Tacoma; Matt R. Cramer; Timothy Hartsuff; Edwin Holbrook; Robert Lee Faust; Elton Eugene Henry; and Frank L. Nelson, Plaintiffs,

v.

BRICKLAYERS AND ALLIED CRAFTSMEN, LOCAL 1, MICHIGAN HEALTH AND WELFARE BENEFITS PLAN; and Trustees of Bricklayers and Allied Craftsmen, Local 1, Michigan Health and Welfare Benefits Plan, Defendants.

No. 5:89–CV–83.

United States District Court,
W.D. Michigan, S.D.

Nov. 27, 1991.

Christopher P. Legghio, Glenda L. Pittman, Michael J. Bommarito, Miller, Cohen, Martens & Ice, P.C., Southfield, Mich., for plaintiffs.

James Moskal, Louis C. Rabaut, Warner, Norcross & Judd, Grand Rapids, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

This case is before the Court on the parties' motions for summary judgment: plaintiffs' motion for partial summary judgment, filed on August 2, 1991; and

defendants' motion to dismiss the case, and for summary judgment, filed on August 28, 1991. The underlying complaint is an action instituted by bricklayers and tile setters, who are members of Local 31, against the Local 1 health and welfare benefits plan (Plan) and the Plan's trustees, in whose jurisdiction plaintiffs have periodically worked.[1] Plaintiffs allege violations of section 302 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186, and section 502(a) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a). This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 186(e), and 29 U.S.C. § 1132(e).

## I. Background of the Plan

Plaintiffs allege without dispute that Locals 31 and 1 are voluntary, unincorporated labor organizations which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, rates of pay, hours of employment and conditions of work and which represent employees in an industry affecting commerce within the meaning of the LMRA, 29 U.S.C. § 152(3), (5), (6), (7). Defendant Plan is an employee welfare benefit plan pursuant to section 3(1) of ERISA, 29 U.S.C. § 1002(1), an employee benefit plan pursuant to section 3(3) of ERISA, 29 U.S.C. § 1002(3), and a jointly trusteed employee benefit plan pursuant to LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5).

The Plan is administered by a six-member board of trustees (Trustees). Pursuant to the LMRA, § 302(c)(5), the Plan is maintained and jointly trusteed by equal numbers of union and employer trustees. Three trustees are appointed by Local 1 and three are appointed by Grand Rapids area contractors. The Trustees take action with respect to the Plan by majority vote. The Trustees have the duty and power to "construe and interpret the Plan and ultimately decide all questions of eligibility, participation and claims." Defendants' Brief in Support at 4–5. The Plan expressly provides, however, that the trustees must govern and construe the Plan in accordance with the ERISA and the LMRA. *See* Plan, art. X, § 10.7, at 45, *in* Plaintiffs' Brief in Support, Ex. A.

The plan is self-funded, providing health care benefits directly from its assets. It does not purchase health care coverage from an insurer. The funds for the Plan come from contributions by collective bargaining agreement signatories who employ Local 1 members as well as members of other unions, including Local 31. The Plan's funds, however, are used exclusively to pay benefits to Local 1 members and their dependents and to defray administrative expenses.[2]

The 21 plaintiffs to this action are members of Local 31, which has approximately 250 bricklayer members. Local 31 is considerably larger than Local 1. Local 31 and Local 1 have jurisdiction over their respective geographic areas, and each union bargains on behalf of its members with employers in its jurisdiction.

Prior to 1991,[3] since approximately 1973, there is no evidence that any health benefits plan or collective bargaining agreement expressly provided that the members of Local 31 were participants in a health benefits plan. Local 1, on the other hand, has had the defendant benefit Plan in place since 1965 when Local 1 and Grand Rapids area contractors established it pursuant to collective bargaining agreements. In addition to Local 31 and Local 1, there are approximately 20 other bricklayer local unions located around the State of Michigan. Like the members of Local 1, and unlike the members of Local 31, the members of all but one of these other local unions were,

---

**1.** Both Local 31 and Local 1 are locals of the International Union of Bricklayers and Allied Craftsmen, AFL–CIO. Local 31 is located in the Lansing area and Local 1 is in the Grand Rapids area of the State of Michigan.

**2.** Most employees who are members of other locals receive the benefit of the contributions made on their behalf via reciprocity agreements. *See infra.*

**3.** As a result of recent contract negotiations, Local 31 is now affiliated with the Saginaw Valley Bricklayers' Health and Welfare Fund (Saginaw Valley Fund). The Saginaw Valley Fund expressly prohibits retroactive reciprocity.

at the times relevant to this lawsuit, expressly made participants in a locally established health benefits plan.

Members of other bricklayer union locals work within the jurisdiction of Local 1, and Local 1 members work within the jurisdictions of other locals. In the late 1970s and early 1980s, the various bricklayer health plans began implementing a state-wide "reciprocity" system. Under this system, when a member of one union works within the geographic jurisdiction of another union, the contributions made to the benefit plan of the other union are, by agreement, transferred back to the benefit plan of the union with which the member is affiliated. This reciprocity system affords a member of any particular union the flexibility of working within the jurisdiction of any other union while maintaining uninterrupted participation in his union's benefit plan, which credits the member for the time worked elsewhere. To implement this reciprocity system, the Local 1 Plan entered agreements to reciprocate contributions to health plans established for members of bricklayer unions based in numerous other Michigan cities. Because plaintiffs' local union does not participate in a health benefits plan, they have not benefited from the reciprocity system when employed outside their local jurisdiction, at least in regard to their work in the Local 1 jurisdiction.

In 1981, the Trustees amended certain terms of the Plan. Pursuant to the amendment, the Plan restricted participation in the Plan benefits to those employees who are members of Local 1. *See* Plan, Art. II, ¶ 2.1(a), at 3, *in* Defendants' Brief in Support, Ex. M at. Defendants expressly state that the purpose of the Plan is to provide "health and welfare benefits to Local No. 1 members and their eligible dependents." Defendants' Brief in Support at 3–4. According to defendants, the Plan has never paid benefits to members of other union locals, even though the employers of such members contribute to the Plan based on the number of hours worked by those members in the jurisdiction of Local 1.

## II. Facts

Since 1985, plaintiffs have periodically worked for employers who were bound by the collective bargaining agreements between the Grand Rapids area contractors and Local 1. When working in the Local 1 jurisdiction for one of those employers, plaintiffs must allow the employers to contribute $1.75 to the Plan for each hour worked by each employee. The employers are required, pursuant to "working Agreements," to make contributions on behalf of plaintiffs to the Plan. *See* Plan, Art. I, ¶ 1.2, at 1, *in* Plaintiffs' Brief in Support, Ex. A. Despite the fact that plaintiffs' employers make contributions on behalf of plaintiffs to the Plan, defendants categorically deny benefits to plaintiffs, even if their contributions are sufficient to otherwise qualify them for benefits. As discussed *supra*, the terms of the Plan expressly restrict participation and benefits to "an individual who is a member of the Local [Local 1] and who receives compensation for duties performed for an Employer." *Id*, Art. II, § 2.1(a), at 3.

## III. Standard

Defendants move for dismissal or summary judgment on all of plaintiffs' claims. Federal Rule of Civil Procedure 12(c) provides that if the Court considers evidence presented beyond the pleadings, the Court should review the motion as a motion for summary judgment pursuant to Rule 56. In this case, the parties have presented and the Court has reviewed numerous evidentiary documents beyond the pleadings. In addition, all parties have had adequate opportunity to present all material pertinent to a Rule 56 motion. Accordingly, I must review defendants' entire motion pursuant to Rule 56.

In reviewing a motion for summary judgment pursuant to Rule 56, this Court should only consider the narrow questions of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a Rule 56 motion, the Court cannot resolve issues of fact, but is empowered to determine only

whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir. 1987); *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir. 1989).

A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)), *quoted in Historic Preservation Guild v. Burnley,* 896 F.2d 985, 993 (6th Cir.1989). On the other hand, the opponent has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a *genuine issue for trial.*'" *Historic Preservation,* 896 F.2d at 993 (quoting *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized and consistently emphasized, recent Supreme Court decisions encourage the granting of summary judgments. *Historic Preservation,* 896 F.2d at 993 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555). Consistent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson,* 477

U.S. at 252, 106 S.Ct. at 2512. "Mere allegations do not suffice." *Cloverdale,* 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Id.*

### IV. Discussion

Plaintiffs allege that conditioning eligibility for participation in the Plan on membership in Local 1 is illegal under the "sole and exclusive benefit" clause of section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5)(A), (B). Plaintiffs also allege that the Plan violates the ERISA and that defendant trustees have violated their fiduciary duties under the ERISA. Plaintiffs seek in their partial summary judgment motion currently pending before the Court declaratory and injunctive relief and, in addition, punitive damages.

### A. The LMRA

Congress enacted the LMRA in response to the post World War II labor-management strife that was causing devastating industrial turmoil and economic insecurity. 1 Theodore W. Kheel, *Labor Law* § 5.02 (1988). Section 302 of the LMRA, codified at 29 U.S.C. § 186, forbids an employer from giving anything of value to any individual, group or organization representing its employees. Subsection 302(c)(5), however, creates an exception to this proscription for trust funds, such as a health and welfare benefits fund, established by an employee representative for the "sole and exclusive benefit" of the employees. *Tafoya v. Western Conference of Teamsters Pension Trust Fund,* 909 F.2d 344, 346 (9th Cir.1990). Section 302(c)(5) permits employers and unions to administer employer-financed trust funds for the benefit of employees as long as certain statutory conditions are met. *NLRB v. Amax Coal Co.,* 453 U.S. 322, 325, 101 S.Ct. 2789, 2792, 69 L.Ed.2d 672 (1981).

Congress enacted section 302(c)(5) because it was concerned "with corruption of collective bargaining through bribery of

employee representatives by employers, with extortion by employee representatives and with the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control." *Arroyo v. United States,* 359 U.S. 419, 425–26, 79 S.Ct. 864, 868, 3 L.Ed.2d 915 (1959). As explained by Senator Ball, one of the co-sponsors of the bill, " 'all we seek to do by [302(c)(5) ] is make sure that the employees whose labor builds this fund and are really entitled to benefits under it shall receive the benefits; that it is a trust fund, and that, if necessary, they can go into court and obtain the benefits to which they are entitled.' " *Amax Coal Co.,* 453 U.S. at 331, 101 S.Ct. at 2795 (quoting 93 Cong.Rec. 4753 (1947); *see* H.R.Conf.Rep. No. 510, 80th Cong., 1st Sess. 66–67 (1947), U.S.Code Cong.Serv. 1947, 1135, 1 NLRB, Legislative History of The Labor–Management Relations Act, 1947, at 570 (1948)). The statutory conditions set forth in section 302(c)(5) "fortify the basic requirement that employer contributions be administered for the sole and exclusive benefit of employees." *UMWA Health & Retirement Funds v. Robinson,* 455 U.S. 562, 572, 102 S.Ct. 1226, 1232, 71 L.Ed.2d 419 (1982). None of section 302's conditional requirements, however, prescribe how the funds should be allocated among the protected employees. *Id.*

The Supreme Court has found that federal courts have jurisdiction over claims alleging that, as a result of a structural defect in a trust plan, the plan is not for the sole and exclusive benefit of the employees, in violation of 29 U.S.C. § 186(c)(5). *Sellers v. O'Connell,* 701 F.2d 575, 577 (6th Cir.1983) (citing *Arroyo v. United States,* 359 U.S. 419, 426–27, 79 S.Ct. 864, 868–69, 3 L.Ed.2d 915 (1959)). The Sixth Circuit extends this jurisdiction to eligibility rules that are adopted by the plan's trustees and that are allegedly arbitrary and capricious, thus constituting a structural defect in violation of section 302(c)(5). *Id.*

B. Plaintiffs have stated a claim under the LMRA

Defendants first argue that plaintiffs have failed to state a claim under the LMRA because plaintiffs have not alleged bribery, extortion, or misuse of funds. Plaintiffs respond that "the gravamen of Plaintiffs' complaint is the wrongful use of Plan assets"—ie., that money has been collected by the Plan from plaintiffs' employers and has not been used for plaintiffs' sole and exclusive benefit. Plaintiffs' Brief in Opposition at 8.

In *Local Union No. 5 of the Sheet Metal Workers' Int'l Ass'n v. Mahoning & Trumbull County Bldg. Trades Welfare Fund,* 541 F.2d 636, 639 (6th Cir.1976), the Sixth Circuit was unwilling to invalidate a rule amended by trustees "where there was no intimation of bribery, extortion, or union misuse of funds that would strike at the purposes of section [302]." The Sixth Circuit also upheld dismissal of a section 302(c)(5) claim in *Sellers,* 701 F.2d at 578, where plaintiff sought monetary instead of injunctive relief and where plaintiff had not alleged bribery, extortion, or union misuse of funds. In *Turner v. Local Union No. 302 Int'l Bhd. of Teamsters,* 604 F.2d 1219, 1228 (9th Cir.1979), the Ninth Circuit granted summary judgment in favor of defendants where "[t]here was no allegation or proof that union officials [ ] extorted funds for their own use or that the union misused the funds or otherwise acted disloyally."

■ I find that plaintiffs have stated a valid claim under section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The complaint alleges that defendants, the Plan and its trustees, "participate[d] in a delivery of money to a jointly trusteed fund without complying with section 302(c)(5) of the LMRA" and that defendants, solely because of plaintiffs' union membership, wrongfully denied participation and benefits to plaintiffs, even though plaintiffs were employed by employers contributing to the fund on plaintiffs' behalf. Second Amended Complaint ¶¶ 22 & 23. The essence of plaintiffs' claims is that defendants are withholding benefits to which plaintiffs are entitled because of trust fund contributions made to the Plan as a result of their labor. Although plaintiffs' complaint does not *expressly* allege misuse of

funds or extortion, I find that the complaint states a valid claim under section 302(c)(5).

## C. Merits of the LMRA Claim

■ Local 31 maintains that the Plan's provision, which limits benefits to Local 1 members, even though collective bargaining agreement signatories are required to make contributions to the Plan on behalf of all employees including non-members, constitutes a structural defect in violation of section 302(c)(5). Defendants admit that they maintain the Plan, not for the benefit of all employees employed under Local 1 contracts, but only for the benefit of Local 1 and its members. Defendants argue, however, that this limited allocation of benefits is not contrary to the "sole and exclusive benefit" clause of section 302(c)(5).

A majority, if not all, the circuits that have considered an alleged violation of the section 302(c)(5) "sole and exclusive benefit" clause have held unlawful eligibility rules that are arbitrary and capricious. *Sellers*, 701 F.2d at 577; *see also Tafoya v. Western Conference of Teamsters Pension Trust Fund*, 909 F.2d 344, 346–47 (9th Cir.1990) (if eligibility requirement arbitrarily denies pension benefits, it does not exist for the "sole and exclusive benefit" of an employee and violates § 302(c)(5)). Moreover, the Sixth Circuit has stated in dictum that some eligibility rules of such plans may be unlawful even if they are not arbitrary and capricious. *Mahoning & Trumbull*, 541 F.2d at 639; *see also Stinson v. Ironworkers Dist. Council*, 869 F.2d 1014, 1019 (7th Cir.1989) (two-pronged test for determining whether plan contains structural deficiencies: 1) whether provision arbitrary and capricious; and 2) whether provision results in the Trust being contrary to its purpose of existing for the sole and exclusive benefit of employees).

In *Mahoning & Trumbull*, the Sixth Circuit held that trustees could amend the trust fund plan in such a way as to cause employees who were members of a withdrawing local to forfeit eligibility coverage from employer prepayments and from the employees' "Hour Bank".[4] The court concluded: "That the amended rule results in certain employers' contributions being used for other than their employees does not violate the 'sole and exclusive benefit' requirement." *Id.* at 639. Factors leading the court to this conclusion were that 1) there was "no intimation of bribery, extortion, or union misuse of funds that would strike at the purposes of section [302];" 2) the trustees enacted the rule to protect the fund's long-term viability; 3) the fund did not use the contributions for any outsiders to the fund; and 4) the amendment to the plan resulted from the local's voluntary decision to withdraw from the fund. *Id.* An additional factor significant to the determination of whether there exists a structural defect in the Plan that violates section 302(c)(5) is whether the provision has a chilling effect on an employee's right to freely choose his bargaining representative. *See Local 50, Bakery and Confectionery Workers Union v. Local 3, Bakery and Confectionery Workers Union*, 733 F.2d 229, 233 (2d Cir.1984) (refusal of predecessor union's fund to transfer unused employer contributions to newly elected union's fund violates of section 302(c)(5)).

Defendants rely on *Stinson*, 869 F.2d at 1018–22, to support their argument that the "sole and exclusive benefit" clause does not outlaw the defendant Plan's provision limiting benefits to Local 1 employees or the Plan's retention of contributions made by employers on behalf of Local 31 employees. In *Stinson*, the Seventh Circuit addressed a plan provision which prohibited unions withdrawing from the Trust from obtaining a proportional allocation of the Trust reserves attributable to their employers' contributions. Because withdrawal had a significant detrimental impact on the Trust and because some of the Union's employees remained participants in the Ohio Trust—its retirees and disabled em-

---

**4.** The trust fund had established an hour bank in which contributions over a certain amount were collected for employees to use during future periods when unable to work for a contributing employer. *Mahoning & Trumbull*, 541 F.2d at 638 n. 1.

ployees—, the Court found no violation of section 302(c)(5). *Id.* at 1021.

The facts in this case are clearly distinguishable from *Stinson.* In this case, the union is not voluntarily withdrawing from the fund, but has never been allowed to participate in the benefits from the fund even though its employees' employers have had to make contributions. Moreover, even though some of the employers' workers, who are members of Local 1, may enjoy the benefits afforded by their employers' contributions, the members of Local 31 are *never* allowed to enjoy the benefits, even though they may otherwise be just as eligible for benefits as some of the Local 1 employees. Such a categorical denial of benefits where contributions are made on behalf of the employees and no reciprocal agreement exists, is without economic justification and is contrary to the protection intended to be afforded by section 302(c)(5).

Defendant argues that because some of the employers' employees are eligible as participants under the Plan, ie. the Local 1 employees, because benefits are paid exclusively to employees of contributing employers, and because plaintiffs have made no showing that any of the contributions have been used to benefit anyone other than a qualified employee, no violation of section 302(c)(5) has occurred. In support of this argument, defendant cites *UMWA Health & Retirement Funds v. Robinson,* 455 U.S. 562, 572, 102 S.Ct. 1226, 1232, 71 L.Ed.2d 419 (1982), where the Court states that none of the section 302(c)(5) requirements "places any restriction on the allocation of the funds among the persons protected by § 302(c)(5)." Certainly, however, if the plan categorically denies any benefits or reciprocation to a group of persons protected by section 302(c)(5), that group is receiving no "protection." The Supreme Court, it seems apparent to me, presumes some allocation. Given the facts of this case, Local 31 workers received nothing, even though mandatory contributions were made on their behalf. The fact that *some* employees of Local 31's employers received benefits does not justify the categorical

denial of all benefits or reciprocation to Local 31 employees.

Defendants justify the exclusionary provision with the argument that it was necessary to protect the economic viability of the Plan. Even if defendants had proffered sufficient proof to support this argument, I find this argument to be without merit. That the health care costs might be higher in Lansing than in Grand Rapids or that increasing the number of potentially eligible participants might result in an increase in the Plan's insurance premiums does not justify categorically denying any benefits or reciprocity to a whole group of workers on whose behalf contributions have been made to the Plan and who would otherwise be eligible for coverage because of the number of hours they have worked in the Grand Rapids area. Defendants maintain that if they were to extend eligibility to Local 31 members, primarily those with health problems would seek work within Local 1's jurisdiction and would exercise the self-pay option to continue the benefits. Although such an incentive cannot be denied, it is not a legitimate basis for categorically denying benefits or reciprocity to members of other unions.

Defendants also argue that the Plan should not recognize any plaintiffs as participants because of the few hours they work in the Local 1 jurisdiction relative to the employees who are members of Local 1. Temporary workers, defendants allege, do not contribute sufficient amounts to support the administrative costs of the Plan. Defendants have not supported this allegation with proofs that all Local 1 workers contribute significantly more to the Plan. Even if there were factual support for defendants' argument, however, defendants could avoid excluding all non-Local 1 members by simply raising the amount of contributions necessary to be eligible for benefits or by only allowing partial benefits to those who work below a certain amount. Assuming there are Local 1 employees who have worked as few hours as plaintiffs, defendants have not demonstrated why temporary Local 1 workers should be eligible for benefits

when temporary Local 31 members are not eligible.

I find that the Plan's provision which categorically denies benefits to all non-member workers whose employers are required to pay Plan contributions on their employees' behalf violates section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Plan deprives plaintiffs of health care benefits from a fund sustained, in part, by their own labor. A trust fund which collects and retains employers' contributions under such circumstances is certainly not functioning for the "sole and exclusive benefit" of employees. The Plan and Local 1 members are unjustly enriched by plaintiffs' labor.

Under the defendants' Plan, if non-members, such as the excluded plaintiffs who are members of Local 31, want to, or, because of work shortages elsewhere, must accept employment in Local 1's jurisdiction, they are forced to work without ever being in a position to reap the benefits of the trust fund contributions made by their employers on their behalf.[5] Such conditions pressure Local 31 members to at least consider joining Local 1 prior to employment in Local 1's jurisdiction in order to become eligible for benefits. I find that this pressure chills Local 31 members' rights to freely choose their bargaining representative. The fact that Local 31 and the area contractors have not collectively bargained for a health and welfare trust plan should not warrant categorical denial of such benefits under another local's plan when the Local 31 members are otherwise qualified for benefits. In fact, such an argument reeks of coercion that the Labor Management Relations Act was intended to curtail.

**D. Relief for violation of the LMRA**

■ Section 302(e) provides that district courts have jurisdiction to "restrain violations of this section." 29 U.S.C. § 186(e). Defendants' continued denial of benefits to plaintiffs pursuant to the Plan's provision constitutes an ongoing violation. Plaintiffs thus request the Court to grant the following injunctive relief ordering defendants: to recognize plaintiffs as Plan participants, to provide plaintiffs with benefits under the Plan, to reimburse plaintiffs for the medical expenses they incurred as a result of defendants' violation, and to provide other relief deemed appropriate.

The Court orders defendants to eliminate the Plan's Local 1 membership eligibility requirement. Defendants must recognize plaintiffs as participants eligible for Plan benefits during the years they have worked in Local 1's jurisdiction, according to the number of hours worked and amount of contributions made to the Plan, to the same extent that defendants have recognized Local 1 members are eligible to receive benefits under the Plan. Defendants must provide plaintiffs with information regarding the Plan benefits to which they are entitled as participants in the Plan.

Because plaintiffs were not participants in any other plan during the time period at issue, ordering defendants to disgorge the contributions made on plaintiffs' behalf will not adequately curtail the ongoing violation. Although Local 31 members are now eligible for participation in a health plan, benefits cannot be made retroactive under the terms of that plan. Accordingly, defendants must provide such benefits as plaintiffs would have been eligible to receive had they been members of Local 1 during the years at issue. Such benefits include the retroactive right to elect and pay for continued coverage and the benefits available if such election had been chosen and paid for at the time. Moreover, defendants must reimburse plaintiffs for those medical expenses they incurred as a result of being wrongfully denied benefits under the Plan.

The Court does not have to reach plaintiffs' claims pursuant to the ERISA because plaintiffs receive the full relief sought in their second amended complaint under the LMRA. In addition to the relief sought in their second amended complaint, plaintiffs request in their motion that the

---

**5.** Defendants even imply that plaintiffs must work at a lower salary in Local 1's jurisdiction in order to offset the contributions their employers must make to the Plan. Defendants' Brief in Support at 12.

Court impose punitive damages under the ERISA section 502(c)(1), 29 U.S.C. § 1132(c)(1). Plaintiffs' Brief in Support at 47–48. Because plaintiffs failed to request this relief in their second amended complaint,[6] punitive damages are denied.

---

6. Plaintiffs did not seek punitive damages under ERISA in either of the two prior complaints.