**REPUBLIC INSURANCE COMPANY, Plaintiff,**

v.

**MASTERS, MATES AND PILOTS PENSION PLAN, Aetna Casualty and Surety Company, and Federal Insurance Company, et al., Defendants.**

No. 88 Civ. 5345 (VLB).

United States District Court, S.D. New York.

April 12, 1994.

Glenn J. Fuerth, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for plaintiff Republic.

Robert P. Stein, Camhy Karlinsky & Stein, New York City, for defendant Aetna.

Barry R. Ostrager, Simpson Thacher & Bartlett, New York City, for defendant Federal.

Kenneth P. Clark, Carter, Ledyard & Milburn, New York City, for pension fund.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This aspect of this litigation involves an inter-insurer dispute concerning responsibility for legal defense costs in connection with a long-running complex lawsuit. The merits, and questions of payment of amounts relating to liability in the underlying cases (the "main litigation"), consolidated and settled prior to trial with the assistance of United States Magistrate Judge Naomi Reice Buchwald. The cases involved maritime investments by the Master, Mates and Pilots Individual Retirement Income Plan and Pension Plan (collectively the "pension plan"). These investments were chosen in part to promote jobs in the industry, resulting in contentions in the main litigation that the financial security of the pension plan had been improperly jeopardized contrary to ERISA, 29 U.S.C. § 1001 *et seq.* See *Lowen v. Tower Asset Management,* 653 F.Supp. 1542 (S.D.N.Y.), *aff'd,* 829 F.2d 1209 (2d Cir.1987); *In re Masters Mates & Pilots Pension Plan and IRAP Litigation,* 957 F.2d 1020 (2d Cir.1992) (remanding for revision of initial settlement).

Republic Insurance Company ("Republic") was directed by order of September 14, 1990 (the "1990 order") to join other insurers in paying its share of defense costs as the main litigation was pursued. Republic has asserted in the current litigation that it had been misled concerning the maritime investments. Republic sought to rescind its policy protecting the pension plan, to be exonerated from further payments of any remaining defense costs, and to secure from the defendants The Aetna Casualty & Surety Company ("Aetna") and Federal Insurance Company ("Federal") monies Republic had paid for defense costs under the interim 1990 order.

By memorandum order dated February 24, 1994 (the "February 24 order"), *Republic Insurance Co v. Masters, Mates and Pilots Insurance Plan,* 843 F.Supp. 914 (S.D.N.Y. 1994), I granted Republic's motion for summary judgment against Aetna and Federal. I granted no relief to Republic against the pension plan due to the absence of any actual controversy between the plan and Republic; no monies were claimed by any party to be due to or from the pension plan.

Aetna and Federal have moved for reconsideration of the February 24 order; reconsideration is granted and the February 24 order reaffirmed.

### II

As recognized in the February 24 order, pension plan are permitted to use their investments in a strategic manner to assist in protecting jobs in the industry involved, provided that in doing so the interests of the beneficiaries of the funds are not put at inappropriately greater risk. See, in addition to the authorities cited in the February 24 order, *Morse v. Stanley,* 566 F.Supp. 1455 (S.D.N.Y.1993), *aff'd in part and rev'd on other grounds,* 732 F.2d 1139, 1411–46 (2d Cir.1984); *Donovan v. Walton,* 609 F.Supp. 1221, 1244–45 (D.Fla.1985), *aff'd,* 794 F.2d 586 (11th Cir.1986); "Federal Officials Promote EFI's as Vehicle to Rebuild the Economy," Daily Labor Report (BNA) No 29 at D56 (Feb 14, 1994).

If, on the other hand, job-production objectives are permitted to lead to deliberate

downgrading of the importance of protecting pensioners' interests, ERISA would obviously be violated.

In their original submissions, Aetna and Federal did not argue that Republic was not misled, but rather that its claim was barred on several procedural grounds rejected in the February 24 order and not reargued on the current applications for reconsideration. Nor has any argument been made that Aetna or Federal were correspondingly misled. It is undisputed that Republic asked detailed questions of the pension plan management seeking to learn of any potentially or arguably improper investments by the pension plan and were not told of any.

Under these circumstances, in order to prevail, Republic need not show that the pension plan's maritime investments were in fact improper or illegal. Republic need only show that there were reasons to suspect that the investments might be vulnerable, together with a request by Republic for information which was not forthcoming, and which information would have been material to Republic's decision whether or not it should insure the pension plan.

### III

■ Suspicions that pension plan assets might be used for purposes diverging from commitment to the plan beneficiaries were clearly material to a carrier considering granting a policy. There is uncontradicted evidence that the pension plan's management regarded maritime investments as hazardous to the pensioners: there was the danger of pressure to undertake debatable investments to protect jobs of union members. There was a longstanding "[h]istorical rule ... [which] restricted or prohibited investment in the maritime industry," that had, as far as the evidence indicates, "never been changed," and which applied to "the pension plan and the individual retirement ... plan." Deposition of Martin Hickey, March 9, 1988 at 286.[1]

This traditional rule was, however, disregarded:

"If the Good Ship Lollipop comes along ... we would try to use it ... if it made sense ... I guess we would swear everybody to secrecy ..." Deposition of Captain Robert J. Lowen, Feb. 21, 1986 at 130, 131. Conversations about maritime venture investments were held with investment advisers "outside of formal meetings of the investment committee or the full board of trustees." Id. at 142–43.

Some participants in the process were "told not to discuss" some of the prospective investments, although the trustees had expressed "concern about" some of the investments being made. Deposition of Samuel Kovnat, May 23, 1988 at 99, 101.

There were indications to some involved that some of the maritime investments were vital for reasons other than protection of the plan because they "could be something of very great importance, if not crucial to the survival of the union." Deposition of Samuel Kovnat, March 7, 1986 at 48. Some proposals for maritime investments were rejected preliminarily, followed by "an appeal of the union ... to take a new and more positive look ..." Id at 49. Trustees were "pressured heavily to find methods of financing that would preserve a virtual hundred percent interest ... for the union." Id at 125.

There were indications that the "state of the industry at that time was poor." Deposition of Allen Clayton Taylor, June 15, 1988 at 40.

### IV

Since Republic was misled at the time it entered as the latest comer to the group of carriers insuring the pension plan, thereby relieving Aetna and Federal of obligations they would otherwise have incurred, repayment of such sums to Republic is proper equitable relief. See generally *Koreag v. Refco,* 961 F.2d 341, 353 (2d Cir.1992) (constructive trust); see also concerning the scope of equitable relief, *Hoelzer v. City of Stamford,* 972 F.2d 495, 497 (2d Cir.1992);

---

**1.** A separate restriction on maritime investments was either written out for the Individual Retirement plan, or it was "just understood that the same restriction that had lived for so long in the pension plan would carry over into the Individual Retirement ... plan." Deposition of Martin Hickey, March 9, 1988 at 287.

*Alden Auto Parts v. Dolphin Equipment,* 682 F.2d 330 (2d Cir.1982); *Lipsky v. Commonwealth United,* 551 F.2d 887, 897 (2d Cir.1976); *Gordon v. Burr,* 506 F.2d 1080, 1083 (2d Cir.1974); *William Whitman Co v. Universal Oil,* 125 F.Supp. 137, 160 (D.Del. 1954).

### V

 As indicated in the February 24 order, the 1990 order directing Republic to pay defense costs was an interim ruling to permit the litigation to proceed, and was not determinative of the ultimate merits as between insurers. Compare *National Union Fire Ins. Co v. Sahlen,* 999 F.2d 1532, 1535 (11th Cir.1993). Law-of-the-case principles should be treated cautiously in application to preliminary interim rulings. *DiLaura v. Power Authority,* 982 F.2d 73, 76 (2d Cir. 1992).

 Claims that further discovery is needed in connection with ruling on the merits of the inter-insurer dispute in 1993 are out of place since they were not pursued at an earlier stage in the form of discovery requests, nor were requests made for adjournment of the motions for summary judgment granted in the February 24 order.

### VI

 Federal seeks reimbursement from Aetna for payments made by Federal on the ground Federal is an excess insurer, an issue not addressed in the February 24 order. Federal concedes, however, that each of the insurers' applicable policies contain similar excess insurer provisions. A reference to Federal as an excess insurer in *In re Masters Mates Litigation,* 957 F.2d 1020, 1023 (2d Cir.1992) does not indicate that other insurers did not have equal status with the result than none was further upstream than any other.

While Federal's agreements with its insureds may make Federal an excess carrier, no evidence has been offered indicating that Aetna is responsible to Federal by contract or understanding, or by being less of an excess insurer than Federal.

Federal challenges Aetna's positions in prior stages of the main litigation, but none of these challenges is pertinent to the present issues. Federal's motion seeking payments from Aetna is denied.

### VII

Federal also claims that Republic has attempted to shift the burden of the pension plan's alleged misconduct to Federal. This is only correct to the extent that Republic was a misled late entrant into the group of insurers, and should not be required to pay sums otherwise payable by earlier entrants not claiming to have been misled when they undertook the risk.

 Federal claims lack of access to facts exclusively within the control of the pension plans, but does not attempt to show that it was misled when it issued its policy. All insurers can obtain facts originally known only to the proposed insured, by asking for the information; they can decline the risk if the information is not provided; they can seek relief subsequently if information is provided which is erroneous.

 Finally, Federal claims that it should not be deprived of the benefit of Republic's contribution to defense costs unless Republic's policy is rescinded. As between Republic and the other carriers (Aetna and Federal), Republic would be entitled to rescind its policy. Such an adjudication cannot be made as against the pension plan or other parties which may be co-insureds because there is no case or controversy pending between Republic and those parties; the absence of such an adjudication should not benefit Federal at Republic's expense.

### VIII

The parties' proposed final judgments should be resubmitted reflecting (a) the relief granted Republic in the February 24 order, (b) the above ruling on Federal's motion, and (c) that no relief rescinding any policy is granted as against the pension plan or any related insureds.

The parties have requested rulings on various items included in proposed judgments submitted. The resubmitted proposed judg-

**686**

ments should not refer to rescinding of any policy, inasmuch as that was not ordered. No reference should be included to any cross-motion for summary judgment in response to Republic's motion for summary judgment other than Federal's motion ruled upon today.

Inasmuch as Aetna and Federal have not engaged in any wrongdoing but were rather unjustly enriched because of payments Republic was required by the 1990 order to make, no costs should be assessed against any party.

## IX

The parties may submit proposed judgments within twenty (20) days of the date of this memorandum order, and shall provide ten (10) days' notice to all other parties.

SO ORDERED.