INTERNATIONAL UNION OF BRICK-LAYERS AND ALLIED CRAFTSMEN LOCAL NO. 5, Emil A. Parietti, Jr. and Philip Mosca, as Trustees of the Hudson Valley District Council Bricklayers and Allied Craftsmen Joint Benefit Funds, Plaintiffs,

v.

HUDSON VALLEY DISTRICT COUNCIL BRICKLAYERS AND ALLIED CRAFTSMEN JOINT BENEFIT FUNDS, Andrew Gallante, Sr., Michael Cavallaro, Salvatore Mauro and Roderick Ciferri III, Defendants.

No. 94 Civ 3061 (VLB).

United States District Court, S.D. New York.

June 21, 1994.

Moacyr R. Calhelha, Rider, Weiner, Frankel & Calhelha, Newburch, NY, for plaintiffs.

Stewart E. Ehlers, Gellert & Cutler, Poughkeepsie, NY, for defendants.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I

This case presents the question of the extent to which international trade unions having authority over locals under the applicable union constitutions may determine the identity of union representatives on joint employer-union employee benefit funds under the Labor Management Relations Act, 1947 ("Taft–Hartley Act"), 29 U.S.C. §§ 185, 186 and ERISA, 29 U.S.C. § 1001 *et seq.*

The current dispute arises out of a conflict concerning the conditions under which the designee of the International Union of Bricklayers and Allied Craftsmen ("International Union,") can displace previously appointed union-appointed trustees of employee benefit (ERISA) funds within territory covered by a newly created Local which replaces locals formerly part of the Hudson Valley District Council of the union.

While the characterization of many facts in this case are disputed, as are some observational facts, the controlling underlying events are not in dispute.

## II

The International Union, like many labor organizations, has concentrated ultimate authority at the International Union level in order to coordinate bargaining demands, resist takeovers from hostile groups representing employers or political factions, and bargain with other unions concerning jurisdictional matters—a particularly significant matter in the construction industry. See authorities cited, *Trustees of Hudson Valley District Council of Bricklayers v. U.W. Marx*, 851 F.Supp. 133 (S.D.N.Y.1994).

So long as union members control a labor organization as required by the Bill of Rights of Members of Labor Organizations, 29 U.S.C. §§ 411–415, the internal structure of the union may be established by the organization itself.[1] Section 301 of the Taft–Hartley Act (29 U.S.C. § 185) permits enforcement of agreements between labor organizations as well as between such organizations and employers. See *Wooddell v. I.B.E.W.*, 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991); *Shea v. McCarthy*, 953 F.2d 29 (2d Cir.1992).

The International Union Constitution, which the parties do not question is binding on all local entities within the union provides:

> The Constitution and By–Laws and all actions of Local Unions shall be in conformity with the IU [International Union] Constitution, all rules, regulations and Codes promulgated thereunder, and all decisions, rulings and orders issued by the IU Executive Board.

Pursuant to that authority, on March 31, 1994 the International Union Executive Board directed the merger of all local union entities within the scope of the Hudson Valley District Council into a new Local 5 and appointed plaintiff Emil Parietti, Jr. its President. That directive provided:

The principal officer of the new Local 5 will be the President, who shall have the authority to make all necessary appointments to be set forth in the Local Constitution and By–Laws, including the appointment of trustees to all trust funds in which members of Local 5 participate. The IU Executive Board appoints Emil Parietti, Jr., currently the Secretary–Treasurer of the Hudson Valley District Council, to serve as President of the new local union.

## III

The only specific ERISA trust agreement cited by the parties, involving former Local 44 (now incorporated into the new Local 5), provides that:

> Each Trustee shall continue to serve at the pleasure of the party who designated [that trustee].... the Union may terminate the designation of any Trustee designated by them through the process outlined in its constitution and bylaws.

It is not disputed that the International Union is, as its Constitution provides, the controlling entity on the labor side in such matters. Consequently the International Union or those it directs to act constitute the Union for purposes of such provisions.

Any provisions adopted by subordinate entities such as locals or district councils cannot survive contrary pronouncements by the International Union authorized by its Constitution, any more than state or federal laws may validly contradict the Constitution of the United States. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

Were the designees of the highest authority under the most basic document applicable—the Constitution of the International Union—not permitted to take office without obstruction, the principle of self-government within labor organizations would be undermined. This principle is crucial to the role of labor organizations as collective bargaining representatives for employees. See 29 U.S.C. §§ 411–415; Weyand, *Majority Rule*

---

1. A labor organization also owes a duty of fair representation to all employees within the collective bargaining unit, regardless of union membership. See *Steele v. Louisville & Nashville R.*

*Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); *Chauffeurs, Teamsters & Helpers v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990).

*in Collective Bargaining,* 45 Colum.L.Rev. 556 (1945).

Although significant areas of local autonomy are important to permit grass roots participation in the affairs of any organization, vesting corrective supervisory authority in a larger entity, as chosen by the Constitution of the International Union here, has legitimate advantages in curbing the impact of local factionalism, as described in the public sector context in *The Federalist* No 10 (Madison).

Such authority also permits those not directly involved to negotiate jurisdictional matters with other unions with greater impartiality, a particularly important advantage in the building industry with its multiple unions and multiple crafts. See 29 U.S.C. § 185 (enforcement of agreements between labor organizations); 29 U.S.C. § 160(k) (resolution of jurisdictional disputes); *Drywall Tapers v. Local 530,* 954 F.2d 69 (2d Cir. 1992); *Newspaper Printing Corp. v. NLRB,* 692 F.2d 615 (6th Cir.1982); *Old Country Iron Works v. Iron Workers Local 40,* 842 F.Supp. 75, 78 (S.D.N.Y.1993)); Goldstein, "Electronic Journalism and Union Rivalry," 29 Labor LJ 137 (1978).

While ERISA fund trustees act as fiduciaries for the beneficiaries of the fund, they are appointed by employer and union representatives pursuant to 29 U.S.C. § 186. They act as do representatives in the public sector, who must exercise their conscience [2] but cannot extend their terms once recalled by their electorate. See *Levy v. Local Union No. 810,* 20 F.3d 516, 519 (2d Cir.1994).[3]

To permit ERISA fund trustees to remain in office contrary to the wishes of the highest authority in their appointing organization would turn ERISA funds into potentially independent sources of power, contrary to the objectives of both ERISA and §§ 301 and 302 of the Taft–Hartley Act (29 U.S.C. §§ 185, 186). *Levy, supra; Dept of Labor, Pension & Benefit Welfare Programs Opinion 85–41A,* Dec. 5, 1985 (1985 ERISA LEXIS 3).

To permit such holding over would enable such trustees to form coalitions within boards of trustees [4] to utilize ERISA funds at their disposal, and ability to accept or reject collective bargaining agreements insofar as they seek to interface with the funds as means to impose their own views—not those of their appointing authorities—on unions and employers in an industry. Similarly, whether or not ERISA funds may properly be used in connection with leveraged buyouts, hostile corporate takeovers or other actions affecting an industry rather than merely prudent investments for the sake of the beneficiaries, such events in fact occur.[5] Insofar as these or related events do occur, properly or otherwise, the underlying employer and employee interests, not independent interests of any of the trustees, should control the use of such power.

## IV

The current controversy arises because a trustee appointed prior to the above events had declined to accept replacement by Mr. Parietti. This was initially attempted on a date prior to March 31, 1994 based on events which need not be canvassed here. It is undisputed that for reasons which are irrelevant here, cooperation between the International Union's designated President of Local 5 and one of the two Union representatives on ERISA trust funds within the area cov-

2. See 10 *Correspondence of Edmund Burke* 40–41 (1978); 6 *Winston S. Churchill: His Complete Speeches* 6179 (House of Commons Dec 1939).

3. The injunctive relief discussed below is authorized by ERISA and 29 U.S.C. § 185. No injunctive enforcement of § 302 of the Taft–Hartley Act (29 U.S.C. § 186) which might require analysis of the permissible scope of such enforcement under *Local 144 Nursing Home Pension Fund v. Demisay,* — U.S. —, 113 S.Ct. 2252, 124 L.Ed.2d 522 (1993) is involved.

4. Compare Committee on Labor Law, Federal Bar Council, "Sweetheart Contracts," 23 Industrial & Labor Rel Rev 105 (1969), 115 Cong Rec, 91st Cong, 1st Sess 15620 (1969), S6318 (daily ed June 12, 1969); Note, 86 ColumLRev 1051 (1986).

5. See fact pattern discussed in *Republic Insurance Co. v. Masters, Mates and Pilots Pension Plan,* — F.Supp. —, 1994 WL 419591, 1994 U.S.Dist. LEXIS 5030 (S.D.N.Y., Dkt. No. 88 Civ. 5345, April 12, 1994).

ered by the former Hudson Valley District Council, has broken down.

By virtue of the holding over of a previously appointed labor representative who has declined to step aside to date, Local 5 as reconstituted by the International Union has only one of four rather than the authorized two out of four of the trustees of ERISA funds collecting contributions required under collective bargaining agreements within its territory. This in turn jeopardizes cooperation between the ERISA funds and the President of Local 5 as designated by the International Union.[6]

While the parties have disputed the question of who could validly appoint union trustees to trust funds prior to March 31, 1994 and the procedures for such appointments, this controversy appears to be of secondary importance given the reality that Mr. Parietti currently has the authority to replace any union trustees within the scope of the Hudson Valley District Council of the International Union.

## V

Continuance of any trustees serving contrary to the wishes and governing documents of the appointing authority inherently causes irreparable injury. To the extent that plaintiffs seek placement of Mr. Parietti's designee as an ERISA fund trustee in lieu of one not so designated, probability of success is clear. Even were it less clear, there would be at minimum fair ground for litigation and equities tilting strongly in favor of plaintiffs. The public interest also favors seating of the ERISA trustee designated by the International Union's selectee. Accordingly, the requirements for a preliminary injunction to that effect are satisfied. As set forth in *Bridgeport Coalition for Fair Representation v. City of Bridgeport*, 26 F.3d 271, 274 (2d Cir.1994):

The standard in the Second Circuit for injunctive relief clearly calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2)

sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

See also *Paddington Corp. v. Attiki Importers*, 996 F.2d 577 (2d Cir.1993); *Plaza Health Laboratories v. Perales*, 878 F.2d 577, 580 (2d Cir.1989); *Jackson Dairy v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979).

The determination called for by *Bridgeport Coalition* can be made here based upon those aspects of the facts which are not in dispute, so that no evidentiary hearing is necessary. *Drywall Tapers v. Local 530*, 954 F.2d 69 (2d Cir.1992).

Plaintiffs, however, have instead moved for a preliminary injunction barring defendants from taking various steps in connection with ERISA funds administered under trustees some of whom were appointed by now-superseded units of the International Union. This would involve the court in enforcement of complex and ambiguous matters while perpetuating rather than resolving the controversy and the litigation.

On the other hand, the injunction which would be appropriate as outlined above has not specifically been requested, and for that reason defendants have not had explicit notice that such relief may be granted.

## VI

The parties are directed to meet expeditiously to seek to settle this matter in light of the observations made in this memorandum order. Unless the matter is adjourned by consent of the parties with the approval of the court, defendants shall show cause within fifteen working days of the date of this memorandum order why a preliminary injunction of the kind referred to above should not be entered.

## VII

In view of this disposition, it appears unnecessary to rule on other contentions of the

---

**6.** On June 29, 1993, prior to the International Union directive consolidating the various local union entities, a former trustee of the Pension Board of Trustees for the Hudson Valley District

Council resigned and was immediately awarded a three-year consulting contract calling for payment of $56,000 per year totalling $168,000 over the three year period.

parties, which are denied without prejudice at this time. Once the proper union trustees are sitting, they can determine what steps, if any, taken prior to the change in union representation they wish to seek to alter or challenge.

SO ORDERED.