RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0200p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

INTERNATIONAL UNION OF PAINTERS AND ALLIED
TRADES DISTRICT COUNCIL NO. 6; JIM SHERWOOD; LEE
DENNEY; CHRIS NAEGELE; EVERETT CHILSON,

*Plaintiffs - Appellants*,

BOARD OF TRUSTEES FOR THE SOUTHERN OHIO
PAINTERS HEALTH AND WELFARE PLAN AND TRUST
FUND,

*Plaintiff-Intervenor*,

v.

WARREN T. SMITH; DANA CLARK; JEREMY TURI; JOE
CONLEY; JAMES ECK; CHAD HUDEPOHL; KYLE YOUNG;
JEFF QVICK,

*Defendants-Appellees*.

No. 24-3282

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:23-cv-00502—Douglas Russell Cole, District Judge.

Argued: December 12, 2024

Decided and Filed: July 31, 2025

Before: COLE, WHITE, and DAVIS, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Diana Robinson, PAOFF, ROBINSON, & WIDMAN LLC, Toledo, Ohio, for
Appellants. Allen S. Kinzer, VORYS, SATER, SEYMOUR & PEASE LLP, Columbus, Ohio,
for Appellees Warren T. Smith and Dana Clark. Evan T. Priestle, TAFT STETTINIUS &
HOLLISTER LLP, Cincinnati, Ohio, for Appellees Jeremy Turi, Joe Conley, James Eck, Chad
Hudepohl, Kyle Young, and Jeff Qvick. **ON BRIEF:** Diana Robinson, PAOFF, ROBINSON,
& WIDMAN LLC, Toledo, Ohio, for Appellants. Allen S. Kinzer, Brian W. Dressel, VORYS,
SATER, SEYMOUR & PEASE LLP, Columbus, Ohio, for Appellees Warren T. Smith and Dana

Clark.  Evan T. Priestle, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellees Jeremy Turi, Joe Conley, James Eck, Chad Hudepohl, Kyle Young, and Jeff Qvick.

————————————

**OPINION**

————————————

DAVIS, Circuit Judge.  This case involves an ERISA fund dispute that pits one side of the fund's board of trustees against the other.  The dividing line, however, is atypical.  While board membership is evenly divided between union-appointed trustees and employer-appointed trustees, two union-appointed trustees have, among other things, voted with the employer-appointed trustees to make procedural changes that the union and its other appointed trustees contend have caused fiduciary-duty violations and portend more harm in the future.  Chief among the alleged harms, according to the union and its trustees, is the entrenchment of two wayward union trustees that the union would like removed.  The union and its fellow plaintiff-trustees were denied a preliminary injunction to head off the harm they fear is brewing and saw their claims against the employer-appointed trustees dismissed by the district court.  They appeal each of these decisions.  For the reasons that follow, we AFFIRM.

I.

A.

*Factual background.*  Plaintiffs Jim Sherwood, Lee Denney, Chris Naegele, Everett Chilson, and the International Union of Painters and Allied Trades District Council No. 6 (the "Union")[1] sued Defendants Warren "Tom" Smith, Dana Clark, Jeremy Turi, Joe Conley, James Eck, Chad Hudepohl, Kyle Young, and Jeff Qvick in their capacities as trustees of the Southern Ohio Painters Health and Welfare Plan and Trust (the "Fund").  Plaintiffs Sherwood, Denney, and Naegele are union-appointed trustees, and Chilson is a Fund participant.  Defendants Smith and Clark are union-appointed trustees whom Plaintiffs have sought to remove from the board of trustees.  And the remaining defendants are employer-appointed trustees.

---

[1]The Board of Trustees for the Southern Ohio Painters Health and Welfare Plan and Trust Fund successfully moved to intervene on November 10, 2023.  However, the Board of Trustees is not a party to this appeal.

The Fund is a multi-employer welfare benefit plan governed by the Taft-Hartley Act (the "Act"). The Union and contributing employers created and maintained the Fund to provide health and welfare benefits to employees represented by the Union. Sixteen trustees manage the Fund, half affiliated with the Union and half with the contributing employers, along with "neutral persons." 29 U.S.C. § 186(c)(5)(B). The Fund's controlling document, the Trust Agreement, governs its operations. As relevant here, the Trust Agreement includes procedures specifying how trustees must be appointed and how they may be removed. The trustees may also amend the Trust Agreement by a two-thirds vote of those trustees present.

Plaintiffs' claims arise from their discontent over certain Fund amendments proposed by Smith and Clark and approved by the employer-trustee defendants. Tensions began to rise in January 2021, when Sherwood, the Union's business manager/secretary-treasurer, sought to appoint a new union trustee for the Local Union # 249 ("Local # 249") because the former Local # 249 representative, Smith, had taken a leave of absence from his trusteeship to serve as the Fund's assistant administrative manager. Smith objected, explaining that he and co-defendant Dana Clark were the union-appointed trustees from Local # 249. Smith thereafter re-assumed his trustee status but continued to serve as a Fund employee. Sherwood responded by requesting a legal opinion from the Fund's then-counsel, Ledbetter Parisi LLC ("Ledbetter"), about the legality under ERISA of Smith serving as both Fund employee and trustee. Ledbetter did not provide a clear response. And soon after, Sherwood learned that Smith had unilaterally fired Ledbetter as Fund counsel and retained new counsel; Potts-Dupre, Hawkins & Kramer ("Potts-Dupre") was introduced as the Fund's legal counsel at the May 11, 2021, board meeting.

Over the course of the next several board meetings, Smith and Clark proposed several amendments to the Trust Agreement with which Plaintiffs did not agree. Some of these amendments directly benefited Smith and Clark, like one that would provide continued health-insurance coverage to retired union trustees—but not all union retirees—at no cost. Smith also proposed an amendment that would suspend dental coverage under the health care plan, which passed over Plaintiff trustees' objections. And Smith proposed an amendment to the Trust Agreement's removal language. Prior to the amendment, union trustees could be removed for just cause by a three-fourths vote of the union trustees, and employer trustees could be removed

for just cause by the same vote of the employer trustees. Smith's proposed amendment would change the removal procedure such that any trustee could be removed for just cause by a three-fourths vote of all trustees, regardless of their appointing authorities. It passed, notwithstanding objections from Plaintiff trustees.

Frustrated by Smith and Clark's actions and claiming to exercise his authority under the International Union of Painters and Allied Trades ("IUPAT") constitution, Sherwood sent them both letters requesting that they resign from their positions as union trustees.[2] Neither resigned. Sherwood then filed internal union charges against Smith and Clark. The Union convened a trial board, which held a trial pursuant to the IUPAT constitution. Smith and Clark obtained legal advice from Potts-Dupre to defend against the charges. The trial board sustained the charges against both Smith and Clark and directed that they each immediately be removed from the Fund and barred from serving as Fund trustees. Smith and Clark again refused to resign, so Sherwood filed a second set of internal charges based on Smith and Clark's noncompliance with the trial board's decision. The second trial board again sustained the charges.

Smith and Clark resigned from the Union while the second round of charges were pending. But they continued to receive retiree benefits due to an amendment the trustees had passed via email ballot on February 13, 2023. That amendment allowed participants who were no longer union members to receive coverage under the Fund's welfare plan. And although Smith and Clark no longer held union memberships, an amendment they helped pass at the March 23, 2023, meeting allowed retirees—like Smith and Clark—to continue serving as trustees without retaining their union memberships. At that same meeting, the trustees voted on a motion for the Fund to cover Potts-Dupre's legal expenses from representing Smith and Clark before the union trial board. The motion passed.

At the June 27, 2023, meeting, Sherwood moved to remove Smith and Clark as trustees in accordance with governing Trust Agreement procedure. This motion failed, while a motion

---

[2]The IUPAT Constitution provides that, along with being "an automatic trustee to any Trust Fund in which the members of the District Council participates," the District Council Business Manager/Secretary-Treasurer "shall appoint (and have the power to remove) all Union Trustees to all Trust Funds of the District Council and all Trust Funds established by Local Unions fully affiliated with the District Council." (IUPAT Constitution, R. 5-1, PageID 372, p. 94 of 198).

for Clark to begin shadowing Smith to take over Smith's role as assistant administrative manager of the Fund passed.

B.

*Procedural History.*   Believing that Smith and Clark continue to unlawfully hold themselves out as trustees and administer the Fund, Plaintiffs filed this suit seeking to remove them as trustees.   Plaintiffs allege that certain amended provisions of the Trust Agreement improperly entrench the sitting trustees in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") and that Defendants mismanaged the Fund in violation of ERISA § 404(a)(1)(B); 29 U.S.C. § 1104(a)(1)(B).   They also assert that all Defendants have breached their fiduciary duties under ERISA § 404(a)(1); 29 U.S.C. 1104(a)(1), in administering the Fund by failing to recognize Sherwood's power over the appointment and removal of union trustees, by amending the Trust Agreement's removal procedures, by failing to vote to remove Smith and Clark as trustees, and by paying personal legal expenses incurred by Smith and Clark with Fund assets.   And Plaintiffs claim Smith and Clark engaged in unlawful self-dealing prohibited by ERISA § 406(b); 29 U.S.C. § 1106(b).   The employer-trustee defendants moved to dismiss Plaintiffs' complaint against them for failure to state a claim, which the district court granted. Plaintiffs' claims against Smith and Clark remain pending before the district court.

Plaintiffs also moved for a preliminary injunction removing Smith and Clark as Fund trustees, terminating any employment relationship between Smith and Clark and the Fund, prohibiting trustees from simultaneously serving as paid Fund employees, prohibiting Fund assets from being spent on trustees' personal legal expenses, and prohibiting Defendants from interfering with the Union's authority to appoint and remove trustees and exercise its own fiduciary duties. The district court denied Plaintiffs' request.  Plaintiffs appeal both the denial of their request for injunctive relief and the district court's dismissal order.  Because we properly have jurisdiction over Plaintiffs' preliminary injunction appeal, 28 U.S.C. § 1292(a)(1), we address that issue first.

II.

We review a district court's denial of a request for a preliminary injunction for abuse of discretion. *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Cap., Inc.*, 274 F.3d 1085, 1097 (6th Cir. 2001). The district court's decision is "only to be disturbed if it 'relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard.'" *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018) (quoting *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011)). We may affirm the district court's denial of injunctive relief "for any reason supported by the record." *Id.*

Courts consider four factors when determining whether to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Ohio v. Becerra*, 87 F.4th 759, 768 (6th Cir. 2023) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (per curiam)). It is frequently stated that a strong or notably weak likelihood of success on the merits can often drive the results of a request for injunctive relief. *See, e.g.*, *S. Glazer's Distribs. of Ohio v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017); *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) (per curiam). Less frequently mentioned, but equally important here, is our observation that "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)); *see also EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 883 (6th Cir. 2025). The irreparable harm factor is indispensable because, without it, a plaintiff cannot show why he needs relief now rather than at the lawsuit's end. *D.T.*, 942 F.3d at 327. "Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory." *Id.*

As we discuss more fully below, because the district court properly concluded that Plaintiffs failed to establish irreparable harm, their request for a preliminary injunction fails on that prong alone.

III.

*Preliminary Injunction.*   The district court, giving Plaintiffs "the benefit of the doubt," recognized three basic categories of purported irreparable harm as the bases for Plaintiffs' request for injunctive relief: "(1) Defendants have engaged in self-dealing; (2) Plaintiff Trustees' votes are immaterial under the current set-up, so they cannot exercise their fiduciary obligations; and (3) entrenchment is necessarily an irreparable harm in and of itself because the Fund no longer operates as a true Taft-Hartley plan when trustees are entrenched." (Op. & Order, R. 58, PageID 2403).  Plaintiffs do not dispute the characterization of these harms on appeal.

To establish that they will face irreparable harm in the absence of injunctive relief, Plaintiffs must show that they are at risk of suffering some harm that "is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002).  Moreover, the harm must be both "certain and immediate," not "speculative or theoretical." *D.T.*, 942 F.3d at 327 (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)).  To that end, Plaintiffs must establish they are likely to suffer some future irreparable harm that will occur during the pendency of the lawsuit that requires we intervene; "[p]ast harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive . . . relief." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019).

Plaintiffs have not shown why monetary damages would not adequately redress their purported harms.  Their first purported harm—trustee self-dealing—flows from allegations that Defendants previously voted in their own interests at the Fund's expense.  Plaintiffs complain that, because Defendants' votes breached their fiduciary duties in the past, Plaintiffs are "concerned about those types of actions continuing to be taken." (Prelim. Inj. Hr'g Tr., R. 43, PageID 2010).  But when the district court asked whether there were any upcoming votes or other Fund obligations where any fears of Defendants' misconduct would be realized, Plaintiffs could provide no concrete examples.  Plaintiffs pointed only to past acts of Defendants, without providing proof of a concrete risk of future harm, to support their theory.  For example, Plaintiffs assert that Smith is a "loose cannon" because—among other things—he proposed actions that, when passed, (1) cut off certain benefits based on Union membership status, (2) suspended

dental benefits,[3] (3) failed to recognize credit earned for hours worked, and (4) caused the Fund to pay more for legal counsel. (ECF 25, Appellants' Br., 39). Plaintiffs add that the Fund pays for Smith's services as a Fund employee.

Yet, each of the identified self-dealing harms would have fiscal ramifications. And Plaintiffs have not explained why post-litigation damages for these expenses would not sufficiently remedy any such harm. More important, each of these actions happened in the past, and past harm cannot serve as the basis for injunctive relief. *Kanuszewski*, 927 F.3d at 406. As the district court properly observed, Plaintiffs were obligated to provide "specific examples of the kinds of harm that [they] anticipat[e] may occur if the relief [they are] seeking isn't awarded." (Prelim. Inj. Hr'g Tr., R. 43, PageID 2013). They could have, for example, identified an upcoming vote proposed or supported by any defendant which, if passed during this suit's pendency, would irreparably deprive Fund beneficiaries of insurance or health care benefits. But they provided no such proof. Thus, the district court's conclusion that "it remains unclear . . . why any self-dealing harms Plaintiffs might experience could not be compensable by money damages" is well taken. (Op. & Order, R. 58, PageID 2403–04).

Plaintiffs' second alleged harm fails for the same reason. Plaintiffs contend that Defendants' misconduct prevents the "properly serving" union trustees from fully exercising their fiduciary duties on behalf of the Fund. (ECF 25, Appellants' Br., 38–39). But when probed by the district court on this point, Plaintiffs confirmed that they were referring to their inability to stop "payments to Mr. Smith, and . . . upcoming payments to Mr. Clark." (Prelim. Inj. Hr'g Tr., R. 43, PageID 2009). Yet they could not explain why money would not redress this harm. Nor could Plaintiffs point to any upcoming votes where this alleged harm might actually impair Plaintiffs' fiduciary responsibilities—a harm that would presumably be "irreparable." So Plaintiffs present no actual and non-speculative reason that Defendants' future misconduct would impair their fiduciary duties. This theoretical harm does not support Plaintiffs' request for injunctive relief.

---

[3]Smith testified that this suspension was only temporary as the trustees later voted to reinstate dental benefits.

Lastly, Plaintiffs contend that entrenchment itself causes irreparable harm. As described by Plaintiffs, entrenchment is a tool used by a trustee to secure a virtually permanent position on the board. The trustee does so without regard to the appointing authority's procedures for selecting and removing trustees. So, according to Plaintiffs, a trustee's entrenchment renders himself unaccountable to the authority he was appointed to represent. And such self-serving conduct then violates the trustee's fiduciary obligation imposed by ERISA. *See* 29 U.S.C. § 1104(a)(1). The district court disagreed with Plaintiffs' theory because Plaintiffs could not prove entrenchment. In particular, the district court rejected Plaintiffs' assertion that the removal amendment, for which Smith and Clark joined the employer-appointed trustees in voting, showed entrenchment. We need not consider the merits of Plaintiffs' entrenchment claim to reach the same conclusion.

Plaintiffs point to no binding authority suggesting that entrenchment is per se proof of irreparable harm. Even if Plaintiffs could show that Smith and Clark's purportedly entrenching actions breached their fiduciary obligations, Plaintiffs advanced scant evidence that their actions will irreparably harm the Fund and its beneficiaries during the pendency of this action.

Resisting this conclusion, Plaintiffs direct us to mostly unpublished, out-of-circuit cases. Broadly speaking, these cases reason that trustees who continue to serve against the wishes and governing documents of the appointing authority hamper the appointing authority's ability to oversee its appointed trustees. And this purported compromise in oversight ability thereby irreparably injures the operation of the Taft-Hartley fund. *See, e.g.*, *Int'l Union of Bricklayers & Allied Craftsmen Loc. No. 5 v. Hudson Valley Dist. Council Bricklayers & Joint Benefit Funds*, 858 F. Supp. 373, 376 (S.D.N.Y. 1994); *Levy v. Loc. Union No. 810*, 20 F.3d 516, 520 (2d Cir. 1994); *Masino v. Montelle*, No. 05-CV-2447, 2005 WL 8159617, at *14 (E.D.N.Y. July 14, 2005); *Demopoulos v. Whelan*, No. 17-CV-5823, 2017 WL 4233081, at *3 (S.D.N.Y. Sep. 25, 2017). We have never recognized such a rule.

Plaintiffs have not attempted to explain how requiring the Union to follow the Trust Agreement's removal procedures would cause irreparable harm. According to Plaintiffs, because the removal amendment conflicts with how the IUPAT constitution outlines the Union's removal authority, Smith and Clark entrenched themselves by voting with the employer trustees

to keep removal power within the Fund, thereby limiting the Union's influence on the process. In essence, Plaintiffs complain that they do not get unlimited control over the removal of union trustees. Plaintiffs' concern is understandable from a process point of view, but the argument does not support their request for injunctive relief because, regardless of whether their allegations mount a plausible theory of entrenchment, they do not establish any immediate irreparable harm that Plaintiffs would suffer.

Again, unless there is proof that the claimed future harm is "certain and immediate," and not "speculative or theoretical," a court may not issue injunctive relief. *D.T.*, 942 F.3d at 327 (quoting *Griepentrog*, 945 F.2d at 154). To the extent that Plaintiffs have proffered any harms, they appear to be monetarily compensable. And their single theory articulating potential intangible harm—entrenchment—fails to show non-speculative harm. Plaintiffs offered no evidence establishing such harm or tying the alleged harm to the trustees' fiduciary obligations under ERISA.

Because Plaintiffs' proffered evidence does not show that they will suffer irreparable harm during the pendency of this litigation, absent injunctive relief, we see no abuse of discretion in the district court's denial of injunctive relief. As such, we need not address the other preliminary injunction factors to conclude that the district court did not abuse its discretion in denying Plaintiffs' request for a preliminary injunction. *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 23–24 (2008); *D.T.*, 942 F.3d at 327.

IV.

*Motion to Dismiss.* Our appellate jurisdiction generally extends only to review of a district court's "final decisions." 28 U.S.C. § 1291. "When a single action presents multiple claims or involves multiple parties, a district court ruling that disposes of only some claims or only some parties is ordinarily not 'final.'" *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013) (quoting 28 U.S.C. § 1291). Defendants argue that, because Plaintiffs' claims against Smith and Clark remain pending before the district court, we should not entertain Plaintiffs' appeal of the motion to dismiss.

The parties dispute whether we might exercise pendent jurisdiction over the dismissal order.  Pendent jurisdiction "allows an appellate court, in its discretion, to exercise jurisdiction over issues that are not independently appealable when those issues are 'inextricably intertwined' with matters over which the appellate court properly and independently has jurisdiction." *Chambers v. Ohio Dep't of Hum. Servs.*, 145 F.3d 793, 797 (6th Cir. 1998) (citation omitted). An unappealable issue is sufficiently intertwined "only 'when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well.'"  *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 759 (6th Cir. 2024) (quoting *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579 (6th Cir. 2003)).  Therefore, our discretion to exercise pendent jurisdiction may also be characterized as "the ability to decline to hear claims even when they are inextricably intertwined with appealable issues."  *Id.*  The issues necessary to resolve Plaintiffs' appeal of the district court's denial of their preliminary injunction request are not inextricably intertwined with the issues raised by their appeal of the district court's dismissal order.  Therefore, we decline Plaintiffs' invitation to exercise pendent jurisdiction.

The district court's order dismissed Plaintiffs' three claims against the employer-trustee defendants: (1) unlawful entrenchment in violation of ERISA, 29 U.S.C.§ 1104(a)(1)(B) (Count 1); (2) request for a declaratory judgment that certain Trust Agreement language violates ERISA, 29 U.S.C. § 1104(a)(1)(A) (Count 2); and (3) the unlawful use of Fund assets to pay certain legal expenses in violation of ERISA, 29 U.S.C. § 1104(a)(1) (Count 3).  To resolve Plaintiffs' appeal of the motion to dismiss, we would need to examine whether Plaintiffs alleged facts sufficient to make out plausible claims for relief under the relevant ERISA provision: Section 404(a).  *See* 29 U.S.C. § 1104(a).  That section outlines the fiduciary duty standards by which Fund trustees must abide.  As relevant to Plaintiffs' claims, Section 404(a) requires trustees to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" with the "exclusive purpose of" benefiting plan participants and beneficiaries and defraying administrative costs while acting with reasonable "care, skill, prudence, and diligence under the circumstances."  *Id.*  Therefore, our review of the motion to dismiss would necessarily focus on whether Plaintiffs' complaint allegations, taken as true, plausibly allege that the employer-trustee defendants breached their fiduciary duties.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs seek injunctive relief against the employer-trustee defendants to prevent future harms similar to the past harms alleged in the dismissed claims. A review of Plaintiffs' likelihood of success on the merits of these claims would necessarily encompass an assessment of both the plausibility of and evidentiary support for their claims—a task that would overlap with the Rule 12(b)(6) inquiry. But, as discussed, Plaintiffs' failure to demonstrate that they will suffer irreparable harm absent preliminary injunctive relief renders that inquiry unnecessary. Thus, Plaintiffs' properly appealable issue—whether a preliminary injunction should issue—is not "inextricably intertwined" with their collateral one. Therefore, we decline to extend our jurisdiction to encompass review of the motion to dismiss.

V.

For the foregoing reasons, we AFFIRM.